1  Thomas F. Mazzucco - 306681
       TFMazzucco@mpbf.com
2  John P. Girarde – 191518
       Jgirarde@mpbf.com
3  Christopher R. Ulrich - 271288
       CUlrich@mpbf.com
4  MURPHY, PEARSON, BRADLEY & FEENEY
   550 California Street, Suite 1400
5  San Francisco, CA  94104-1001
   Telephone:    (415) 788-1900
6  Facsimile:    (415) 393-8087

7  Attorneys for Defendant
   KELEOPS USA, INC.

8

9
                    UNITED STATES DISTRICT COURT
10
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                       OAKLAND COURTHOUSE
12

13  JEFFREY GARON, individually and on behalf of      Case No.: 4:25-cv-02124-DMR
    all persons similarly situated,
14                                                     DEFENDANT KELEOPS USA, INC.'S
           Plaintiff,                                  MOTION TO DISMISS PLAINTIFF'S
15                                                     FIRST AMENDED CLASS ACTION
    v.                                                 COMPLAINT PURSUANT TO RULE
16                                                     12(B)(6); MEMORANDUM OF POINTS
    KELEOPS USA, INC.,                                 AND AUTHORITIES IN SUPPORT
17
           Defendants.                                 Date:      July 10, 2025
18                                                     Time:      1:00 p.m.
                                                       Court:     4
19                                                     Judge:     Hon. Donna M. Ryu

20

21

22

23

24

25

26

27

28
                                         - 1 -

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE that on July 10, 2025, at 1:00 pm, before Chief Magistrate Judge

4 Donna M. Ryu in Courtroom 4 of United States District Court For The Northern District Of California,

5 located at 1301 Clay Street, 3rd Floor, Oakland, CA, Defendant KELEOPS USA, INC. will move the

6 Court to dismiss Plaintiff JEFFREY GARON's First Amended Class Action Complaint ("FAC")

7 pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff's cause of action fails

8 to state a claim upon which relief can be granted.

9     Plaintiff's FAC alleges that Defendant caused trackers to be installed on his and prospective class

10 members browsers which allowed third parties to collect their IP addresses when they visited

11 Gizmodo.com. This Motion is brought pursuant to Rule 12(b)(6) as to plaintiff's sole cause of action for

12 violation of the California Invasion of Privacy Act, California Penal Code § 638.51(a), on the ground

13 Plaintiff fails to satisfy the basic pleading standards required to state a claim for relief.

14     As such, Defendant requests that the Court dismiss Plaintiff's FAC, without leave to amend.  In

15 the alternative, Defendant requests that the Court stay this case through the end of 2025, pending a final

16 vote by the California State Legislature on California Senate Bill 690, which would render this case moot

17 if it is enacted.

18     This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in

19 Support; the Request for Judicial Notice in Support, with attached exhibits; all other matters subject to

20 judicial notice pursuant to Federal Rule of Evidence 201; and such further evidence, argument, and other

21 matters as may be presented at or before the hearing of the Motion.

22 Dated:  May 6, 2025                    MURPHY, PEARSON, BRADLEY & FEENEY

23

24                                 By _____
                                      *Thomas F. Mazzucco*

25                                    Thomas F. Mazzucco
                                      John P. Girarde
26                                    Christopher R. Ulrich
                                      Attorney for Defendant
27                                    KELEOPS USA, INC.

28

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED          4:25-CV-
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS              02124-DMR
AND AUTHORITIES IN SUPPORT

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 6

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................ 7

III.  MATERIAL ALLEGATIONS OF PLAINTIFF'S COMPLAINT .................. 7

IV.   LEGAL ANALYSIS ....................................................................................... 8

    A.    STANDARDS ON MOTION TO DISMISS ......................................... 8

    B.    FRCP 12(b)(6) GROUNDS TO DISMISS THE COMPLAINT AS TO ALL
         CAUSES OF ACTION FOR FAILURE TO STATE A CLAIM ......................... 8

         1.    Plaintiff Has Not Adequately Alleged The Use Of A "Pen Register" ....... 8

         2.    The Code From Gizmodo.Com's Website Is Not A Device Or Process
             Under The Pen Register Statute ............................................................... 10

         3.    Gizmodo.com Is Allowed To Collect IP Addresses To Operate Its
             Website ................................................................................................... 14

         4.    Plaintiff's FAC Should Be Dismissed Without Leave to Amend ............ 15

         5.    SB690 Currently Pending In The California State Legislature Would
             Render This Case Moot If Enacted, And Thus If The Court Is Not
             Inclined To Dismiss On The Merits, This Action Should Be Stayed ...... 15

V.    CONCLUSION ............................................................................................ 20

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

4:25-CV-
02124-DMR

TABLE OF AUTHORITIES

STATE CASES

*Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025) ...12, 16, 19, 20

*Jose Licea vs. Hickory Farms LLC*, Case No. 23STCV26148 ............................................11, 12, 14, 20

*People v. Larkin* (1987) 194 Cal.App.3d 650, 653 n.2 .............................................................9

*Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 ...................................................11, 12, 13, 16, 19

FEDERAL CASES

*Balistreri v. Pacifica Police Department.*, 901 F. 2d 696, 699 (9th Cir. 1958)........................................9

*Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 835 (7th Cir. 1999)............................................21

*Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419 .........................15

*Coto Settlement v. Heisenberg*, 593 F. 3d 1031, 1038 (9th Cir., 2010) ....................................9

*Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007) ............................................15

*Greenley v. Kochava, Inc.* (S.D. Cal. July 27, 2023) No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 12

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959)........................................21

*Paulsen v. CNF, Inc.*, 391 F. Supp. 2d, 804, 807 (N.D. Cal. 2005)............................................9

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717-722 (1996) ............................................21

*Smith v. Maryland* (1979) 442 U.S. 735, 736 fn. 1 ............................................9

*Sprewell v. Golden State Warriors*, 266 F. 3d, 979, 988 (9th Cir., 2001) ....................................9

*Steinle v. City and County of San Francisco*, 230 F. Supp. 3d 994, 1014 n.8 (N.D. Cal. 2017) ...........12

*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)............................................12

*United States v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008) ............................................15

*United States v. Soybel* (7th Cir. 2021) 13 F.4th 584, 589 ............................................10

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

**STATUTES**

**STATE STATUTES**

2015 California Assembly Bill No. 929, California 2015 2016 Regular Session.............................11, 13

California Bill Analysis, A.B. 929 Assem ............................................................................................11

California Penal Code § 629.51 ...........................................................................................................14

California Penal Code § 638 ..........................................................................................................11, 12

California Penal Code § 638.50 ...................................................................................10, 11, 14, 17, 18

California Penal Code § 638.51 ..............................................................................................6, 13, 19

California Penal Code § 638.51(a)...............................................................................2, 9, 17, 21

California Penal Code § 638.51(b) ..............................................................................................14, 15

California Penal Code § 638.52 ..........................................................................................11, 13, 19

California Penal Code § 630 ...............................................................................................................13

**FEDERAL STATUTES**

Federal Rule of Evidence 201 .........................................................................................................2, 16

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................2, 7, 9

18 U.S.C. § 1322(a)-(b)....................................................................................................................19

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

4:25-CV-
02124-DMR

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     INTRODUCTION**

Plaintiff JEFFREY GARON brings this suit against Defendant KELEOPS USA, INC., alleging violations of California's criminal pen register statute. A pen register is a device or process that records numbers dialed by a telephone. The California Legislature enacted California Penal Code § 638.51 to enable law enforcement to install and use a pen register to track to whom suspected criminals were talking. That is not at all what Plaintiff has alleged in his First Amended Complaint ("FAC"). Moreover, the legislative intent and history have not intended that § 638.51 et seq. to be applied for this purpose.

To further underscore that this was not the legislative intent, the California State Senate has introduced Senate Bill 690, Crimes: Invasion of Privacy (SB690), which has already been unanimously passed by the Committee on Public Safety and referred to the Committee on Appropriations. SB690 will: (1) exempt communication intercepts for a commercial business purpose from those prohibitions; (2) specify that a pen register does not include a device or process used in a manner consistent with a commercial business purpose; (3) specify that this authorization of a private right of action for violations does not apply to the processing of personal information for a commercial business purpose; and (4) make its provisions retroactive and applicable to any case pending as of January 1, 2026.

Since SB690 would render this case moot if it is enacted, if the Court is not inclined to dismiss the action on its merits, at a minimum this case should be stayed until the California State Legislature has a final vote on SB690. It would waste judicial resources to proceed with costly discovery and law and motion practice in a class action that is likely to be rendered moot by the end of year as the result of legislative amendments to the laws that underly these claims. Under such circumstances, this Court may exercise its judicial discretion to invoke abstention principles and stay this action pending the Legislature's final vote on SB690.

Plaintiff's FAC should be dismissed without leave to amend pursuant to Rule 12(b)(6), because Plaintiff's cause of action fails to state a claim upon which relief can be granted. In the alternative, this matter should be stayed in the interest of conservation of judicial resources, pending a final vote by the California State Legislature on SB690, which would render this case moot if it is enacted.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether this Court should: (1) dismiss Plaintiff's FAC with prejudice under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; or in the alternative (2) stay this proceeding to the end of 2025, pending the outcome of SB690.

## III.    MATERIAL ALLEGATIONS OF PLAINTIFF'S COMPLAINT

The material allegations of the FAC are as follows:

Plaintiff Jeffery Garon initially filed a complaint in the Superior Court of California, County of Marin against Gizmodo Media Group, LLC on November 5, 2024. Garon then filed a First Amended Complaint ("FAC") on January 28, 2025, now naming Keleops USA, Inc.[1] as Defendant. (Dkt. No. 1, Exhibit A.) On February 28, 2025, Defendant Keleops USA, Inc. filed a Notice of Removal of Civil Action in this Court. (Dkt. No. 1.)

Plaintiff alleges that "Defendant Keleops USA Inc., [...] owns and operates a website, https://gizmodo.com (the "Website")" (Dkt. No. 1, Exhibit A ¶ 1.) Gizmodo.com is "one of the internet's very first tech news blogs, [and] is dedicated to fiercely independent reporting and commentary on technology, science, and internet culture." (*Id* ¶ 25.)

A public IP address is accessible from anywhere on the internet; it is assigned by an Internet Service Provider ("ISP") and it is unique globally. (*Id* ¶ 36.) Public IP addresses are required for devices that need direct internet access. (*Id.*)

When a user visits the website, the user's browser sends an "HTTP request" or "GET" request to Gizmodo.com's server. (*Id.* at ¶ 28.) When Gizmodo.com''s server receives the HTTP or GET request, the server uses the device's IP address to send an HTTP response with instructions to the user's browser on how to display Gizmodo.com, including "what images to load, what text should appear, or what music should play." (*Id.* at ¶ ¶ 28-30.) Plaintiff alleges that Gizmodo.com's server's instructions (*i.e.*, the Website's code, as programmed by Defendant) cause the Trackers to be installed on a user's browser. (*Id.* at ¶ 30.) Plaintiff also alleges that the "Trackers" then cause the browser to send identifying

---

[1] Keleops USA, Inc. is neither the owner nor operator of Gizmodo.com. Rather, Keleops USA, Inc. is the sole member of Gizmodo USA LLC, the American entity owning and operating Gizmodo.com. Gizmodo USA LLC acquired Gizmodo.com in June 2024.

information—including the user's IP address—to Third Parties ironSource, Neustar, and Lotame. (*Id.* at ¶ 30.) The information allegedly collected by the code is a user's IP address (*Id.* at ¶ 30.)

Thus, Plaintiff alleges that when Plaintiff and Class Members visited the Website, the Website caused the Trackers to be installed on Plaintiff and other users' browsers. (*Id.* at ¶ 32.) Plaintiff then alleges that upon being installed on users' browsers, the third parties operating the Trackers ironSource, Neustar, and Lotame—collect users' IP address and other device information. (*Id.*)

Plaintiff claims to have visited Gizmodo.com regularly since ass long ago as 2010 (*Id.* at ¶¶ 7 and 137.) Plaintiff alleges his IP address was "collect[ed]" by Gizmodo.com. (*Id.* at ¶ 143.)

## IV.    <u>LEGAL ANALYSIS</u>

### A.    STANDARDS ON MOTION TO DISMISS

A Rule 12(b)(6) Motion to Dismiss is appropriate where a cause of action of a complaint fails to allege a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory. (*Balistreri v. Pacifica Police Department*., 901 F. 2d 696, 699 (9th Cir. 1958).) A 12(b)(6) motion to dismiss is also based on the allegations of a complaint; for purposes of the motion, Plaintiff's allegations are assumed to be true and are construed in favor of the Plaintiff. (*Paulsen v. CNF, Inc*., 391 F. Supp. 2d, 804, 807 (N.D. Cal. 2005).)

In addition, the Court may take into account matters of public record and matters susceptible to judicial notice. (*Coto Settlement v.  Heisenberg*, 593 F. 3d 1031, 1038 (9th Cir., 2010).)  Documents attached to the FAC are considered part of the pleading for purposes of a Motion to Dismiss, and the facts established by reference to such documents supersede contrary allegations alleged in the FAC. (*Sprewell v. Golden State Warriors*, 266 F. 3d, 979, 988 (9th Cir., 2001).)

### B.    FRCP 12(b)(6) GROUNDS TO DISMISS THE COMPLAINT AS TO ALL CAUSES OF ACTION FOR FAILURE TO STATE A CLAIM

#### 1.    Plaintiff Has Not Adequately Alleged The Use Of A "Pen Register"

In his only Cause of Action, Plaintiff seeks damages for alleged violation of the California Invasion Of Privacy Act, California Penal Code § 638.51(a).

Plaintiff alleges that Gizmodo.com's website contains a code that constitutes a "pen register"

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

under California law. (Dkt. No. 1, Exhibit A ¶ 3.) A pen register is a device installed on a landline telephone to make a record of the phone numbers dialed from that phone. (*See, Smith v. Maryland* (1979) 442 U.S. 735, 736 fn. 1 ["A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."]; *People v. Larkin* (1987) 194 Cal.App.3d 650, 653 n.2 ["A pen register is a mechanical device connected to a telephone number to monitor dialing activity. It registers the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced."].)

The functions of Gizmodo.com's website described in the FAC are not a pen register. Put simply, the FAC does not allege that Gizmodo.com recorded "dialing, routing, addressing, or signaling information" information. (Penal Code § 638.50(b).) Rather, it alleges the transmission of Plaintiff's IP address from which he communicated with the Gizmodo.com website and allegedly various device identifiers, such as browser and device type. (Dkt. No. 1, Exhibit A ¶ 2.) Recording an IP address is not equivalent to recording the numbers dialed from a phone and does not make any record of other outgoing routing, dialing, or signaling information. For example, Plaintiff does not allege that the code recorded the websites he visited after visiting Gizmodo.com's website as a "pen register" device would have. (*See, e.g., United States v. Soybel* (7th Cir. 2021) 13 F.4th 584, 589 [pen register installed by the government under the federal pen register statute "recorded connections between [Defendant's] private IP address and the IP addresses of those websites that internet users in the apartment had visited."].) Plaintiff's IP address reveals only the device he used, not the who or what he communicated with.

The statutory definition of a pen register is specific as to the type of data a pen register must collect. (Penal Code § 638.50(b).) Having alleged only that the code records information relating to the source of an outgoing communication, not where that communication is routed, Plaintiff's claim under the California Pen Register Act fails. The FAC does not allege that Gizmodo.com's code captures any dialing, routing, addressing, or signaling information of an outbound communication as required by California Penal Code section 638.50(b).

Moreover, Plaintiff's FAC describes a "trap and trace" device, but does allege that Gizmodo.com used such a device, nor can it. Pen registers and trap trace devices are two distinct types of devices,

- 9 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

defined by separate statutory provisions. (Penal Code § 638.50(b) [defining a "pen register"]; Penal Code § 638.50(c) [defining a "trap and trace" device].) A "trap and trace" device records the incoming electronic or other impulses that "identify the source of [] wire or electronic communication[s]" from "incoming electronic or other impulses," not outgoing information as a pen register would. The FAC alleges that through the Trackers, the Third Parties collect information—users' IP addresses—that identifies the outgoing "routing, addressing, or signaling information" of the user. (Dkt. No. 1, Exhibit A ¶ 89.) The FAC does not allege that Gizmodo.com recorded incoming information.

### 2. The Code From Gizmodo.Com's Website Is Not A Device Or Process Under The Pen Register Statute

Plaintiff is also attempting to apply a statute onto a situation that it was not intended to cover. The legislative history of the California Pen Register Statute makes clear that it was meant to protect individuals from the use of "device[s] or process[es]" that could be used for telephone surveillance. (*See* California Bill Analysis, A.B. 929 Assem., 4/29/2015 ["This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance"]; 2015 California Assembly Bill No. 929, California 2015 2016 Regular Session [recognizing that pen registers are often "utilized by law enforcement to track which people in an investigation are communicating with one another and at what times" and noting that "[t]o date, California d[id] not have a state statute authorizing the use of pen registers or trap and trace devices."].) Furthermore, other sections of California Penal Code § 638 confirm the term "pen register" is intended to have its traditional meaning, i.e. devices attached to phones. Section 638.52 which governs the application and authorization of use of a pen register by a law enforcement officer, provides that a pen register may not collect the physical location of the subscriber "except to the extent that the location may be determined from the telephone number." (Penal Code § 638.52.) Further, 638.52 clarifies that any court order authorizing law enforcement to use a pen register must include the identity of the person associated with the "the telephone line to which the pen register ... is to be attached." (*Id.*)

Nothing in the Penal Code extends a pen register to software. The "device or process" required under Section 638.50 must be tied to "telephonic functionality," and a plaintiff fails to plead the use of

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

a "device" under the Section 638.50 if the complaint does not include "any actual specific reference to a mobile phone or other potential form of communication device potentially qualifying as a cellular device." (Request for Judicial Notice No. 1 *Jose Licea vs. Hickory Farms LLC*, Case No. 23STCV26148, Superior Court of California, County of Los Angeles, Minute Order, dated March 13, 2024 ("*Licea* Order"); and Request for Judicial Notice No. 2 *Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 Superior Court of California, Los Angeles County, Minute Order, dated January 27, 2025 ("*Sanchez* Order").) Here, the FAC alleges that the code collected the IP address of Plaintiff's browser. Accordingly, Plaintiff's claims fail because the code is not a device or process associated with telephonic surveillance.

Nonetheless, the FAC alleges, that the code or the alleged Trackers are "at least a 'process' "under California Penal Code § 638 because it is "software that identifies consumers, gathers data, and correlates that data," quoting language from, (*Greenley v. Kochava, Inc.* (S.D. Cal. July 27, 2023) No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *15.) In *Greenley*, however, the court did not hold that any software that identifies consumers, gathers data, and correlates that data is a pen register. Instead, the court limited its holding to finding that "surreptitiously embedded software installed **in a telephone**" that "identifies consumers, gathers data, and correlates that data through unique fingerprinting" pinning them to a precise geolocation could be a pen register. (*Id.* (emphasis added).) The facts of that case are vastly different than those alleged here.

Moreover, given Plaintiff's CIPA claim presents a question of state law, the Court should look to the state court decisions Defendant has cited which have dismissed similar CIPA pen register claims rather than federal court decisions to the contrary in attempting to predict how the California Supreme Court might decide the issue. (*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)*; Steinle v. City and County of San Francisco*, 230 F. Supp. 3d 994, 1014 n.8 (N.D. Cal. 2017) ["Federal district courts confronted with questions of state law must follow precedent set by the state's highest court or, where no such precedent exists, predict how that court would decide the issue.... Holdings of lower state courts are often persuasive authority in conducting the latter inquiry."], *aff'd*, 919 F.3d 1154 (9th Cir. 2019).

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

The facts alleged by Plaintiff closely resemble those in *Licea*, *Sanchez* and *Aviles* . (*See*, *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147; *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025); and *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025).) In *Licea*, in which an online retailer was alleged to have violated the CIPA by capturing the plaintiff's IP address when plaintiff visited the retailer's website. (*Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at p. 2-3 (Cal.Super. Mar. 13, 2024).) The plaintiff claimed that, as part of the process of capturing plaintiff's IP address, the retailer had installed code on the plaintiff's device, and this code met the definition of a pen register and/or a trap and trace device under the CIPA. (*Ibid.*) The retailer demurred, arguing: 1) that the plaintiff's complaint failed to sufficiently establish the use of a pen register and/or a trap and trace device by the retailer, and 2) that the CIPA applied to telephonic devices, such as cell phones, and *not* internet-connected devices with unique IP addresses. (*Id.* at 3.)

The court agreed with the retailer and sustained the demurrer. (*Id.* at 7.) The reasoning behind the court's decision provides a valuable roadmap, and ample support for the conclusion that web analytics tools cannot give rise to a claim under the CIPA. In that Court's view, the CIPA is limited to telephonic communications. (*Id.* at 4-5 ["CIPA begins with Penal Code section 630, with definitions and limitations reflecting an era of cordless radio phones and cellular phones ... Legislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications."].) Ultimately, the *Licea* court found no basis for concluding that the CIPA should apply to internet-based communications or the use of web analytics tools that track website users' IP addresses. (*Id.* at 5. ["[N]othing in the complaint establishes an IP address as equivalent to ... 'unique fingerprinting.'"].)

In *Sanchez v. Cars.com Inc.* the Plaintiff made similar allegations as in *Licea* and here. The court in *Sanchez* sustained Cars.com's demurrer finding that the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites. (*Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at

- 12 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

p. 3 (Cal.Super. Jan. 27, 2025).) Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing. (*Ibid*.) The California legislature enacted Assembly Bill 929, the genesis of CIPA § 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart. (*Ibid*.) In enacting Assembly Bill 929, the California Legislature adopted the same authorization provision in CIPA § 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. (*Ibid*.) Thus, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites. (*Ibid*.)

Similarly, the FAC refers to recording and transmission of Plaintiff's IP address and the allegations that Third Parties ironSource, Neustar, and Lotame collect the website visitors' IP address and various device identifiers such as browser and device type.  (Dkt. No.  1, Exhibit A ¶ 2.) This allegation does not satisfy the standard set by *Licea* or *Sanchez*, nor could it make up for the fact that the statute was not intended to apply to the operation of website browsers.

In sustaining the retailer's demurrer, the *Licea* court also emphasized its public policy concerns regarding adopting the plaintiff's novel theory of liability for violation of Section 638.51:

> [P]ublic policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator. Such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider [here].

(*Licea* Order. at 6.) These concerns are significant, in that allowing Plaintiff's claim to proceed would have a sweeping effect upon the common use of the Internet, given that IP addresses are critical to how the Internet functions, and this effect would impact most internet-based communications, *not only* online retailers (e.g., the online retailer in *Licea* and *Sanchez*). (*See Id.*)

- 13 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

Because the FAC only alleges the existence of code that collects a user's IP address, browser, operating system, and device type Plaintiff has failed to plead a "device or process" within the meaning of the CIPA and the FAC must be dismissed.

### 3.    Gizmodo.com Is Allowed To Collect IP Addresses To Operate Its Website

Even if the code from Gizmodo.com's website was a device or process within the meaning of Cal. Penal Code § 638.50, which it is not, Gizmodo.com is nonetheless allowed to collect IP addresses to operate its website. Gizmodo.com is a provider of electronic communication service. "Electronic communication" means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." (Cal. Penal Code § 629.51.)   Section 638.51(b)(1) allows a provider of such services to use a "pen register" or "tap and trace device" to "operate, maintain, and test a wire or electronic communication service."  Fundamentally, any website provider must collect IP addresses to operate a website.  This is no different in this case: for Gizmodo.com to operate and load, a user must first have an IP address and provide it to Gizmodo.com because that is what enables Gizmodo.com's server to route the data transmitted to the user's browser.  Because the IP address enables Gizmodo.com's server to load the data the user is requesting, the alleged collection of IP addresses is permitted by statute. (*See, e.g., Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) [holding the "collection of incoming IP addresses by defendants [wa]s exempt" pursuant to an exception to the federal pen register statute allowing "providers of electronic communication services" to use a pen register or trap and trace devices to operate and maintenance of such service because "defendants already and necessarily capture[d] such data ... to operate the website."].)

Furthermore, Section 638.51(b)(5) allows a provider to use a "pen register" or "tap and trace device" with the user's consent. IP addresses "are voluntarily turned over in order to direct ... third party[] server[s]" and so no reasonable expectation of privacy attaches to them. (*United States v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008).)  Because IP addresses are ubiquitous in the function of the Internet, Plaintiff necessarily consented to the collection of his IP address by Gizmodo.com simply by browsing the Internet and accessing its website.  Thus, Gizmodo.com is exempted from liability for any alleged

- 14 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

recording of his IP address with a pen register, if such a register existed. Here, Plaintiff, apparently a regular user of Gizmodo.com, a tech news blog about technology, science and internet culture, voluntarily and knowingly presented his IP address to the Website's server to access the Website and Plaintiff cannot now plausibly claim that he did not consent to Gizmodo.com's alleged use of a device or process to decode or record his IP address.

### 4. Plaintiff's FAC Should Be Dismissed Without Leave to Amend

Dismissal without leave to amend is appropriate where a complaint cannot be saved by any amendment. (*Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007).) Here, it is clear from the face of the FAC, the matters within subject to judicial notice and the nature of the claim against Defendant, that no amendment can fix the deficiencies. For the reasons discussed above, the FAC cannot be saved by any amendment, and therefore dismissal of Defendant without leave to amend is warranted.

### 5. SB690 Currently Pending In The California State Legislature Would Render This Case Moot If Enacted, And Thus If The Court Is Not Inclined To Dismiss On The Merits, This Action Should Be Stayed

The *Sanchez* and *Aviles* cases discussed previously both rejected the pen register and trap and trace theories being advanced by Plaintiffs in this case, holding that it is a basic, not illegal, function of the internet to collect IP addresses of website visitors, and that CIPA should not be interpreted to cover internet-based technologies without clear legislative intent. While other courts have previously dismissed pen register and trap and trace claims, these dismissals are on new grounds. In fact, the pending proposed amendment of CIPA currently working its way through the California State Legislature, California State Senate Bill 690 ("SB690"), applies the courts' reasoning *Sanchez* and *Aviles*, and demonstrates a clear legislative intent to curb litigation created by misconstruing CIPA.

On March 24, 2025, California State Senator Anna Caballero introduced SB690, which proposes to amend CIPA to exempt communication intercepts for a commercial purpose, which is exactly the basis of Plaintiff's claims against Defendant in this case. Senator Caballero unambiguously stated the purpose of SB690: "The purpose of this bill is to protect businesses from vexatious litigation by exempting 'commercial business purpose' from civil and criminal liability under the California Invasion of Privacy Act (CIPA) which prohibits wiretapping, eavesdropping on or recording confidential

- 15 -

communications, intercepting and recording cellular communications, or using a pen register or trap and trace device." (See: https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690)[2]

In SB690 "commercial purpose" is defined as the processing of personal information either performed to further a business purpose or subject to a consumer's opt-out rights. The bill would also exclude any device that is used in a manner that is "consistent with a commercial business purpose" from the definitions of a pen register and trap and trace device. If SB690 is enacted, internet technologies that are currently being targeted -including exactly those at issue in this case- would fall under the "commercial purpose" exemption.[3]

Under CIPA's current pen register and trap and trace provisions, "a person may not install or use

---

[2] Pursuant to Federal Rule of Evidence 201, Defendant hereby requests the Court to take judicial notice of the proposed drafting, history and background of SB690 outlined on the *Calmatters Digital Democracy* website.

[3] SB 690 as amended states as follows:

Crimes: invasion of privacy.

(1) Existing law prohibits tapping a communication wire or intercepting or recording a telephone communication, as specified, without the consent of all parties. Existing law exempts specified communication intercepts, including those in a correctional institution and those required for utility maintenance purposes. A violation of these provisions is punishable as either a misdemeanor or a felony.

This bill would also exempt communication intercepts for a commercial business purpose from those prohibitions. The bill would define a commercial business purpose to mean the processing of personal information either performed to further a business purpose or subject to a consumer's opt-out rights.

(2) Existing law defines a "pen register" for these purposes to mean a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted but not the contents of a communication, with specified exceptions. Existing law defines a "trap and trace device" as a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication but not the contents of a communication.

The bill would specify that a pen register does not include a device or process used in a manner consistent with a commercial business purpose. This bill would also specify that a trap and trace device does not include a device or process that is used in a manner consistent with a commercial business purpose.

(3) Existing law authorizes a person who has been injured by a violation of those prohibitions to bring an action against the person who committed the violation to enjoin and restrain the violation, as well as to bring an action for monetary damages, as specified.

This bill would specify that this authorization does not apply to the processing of personal information for a commercial business purpose.

(4) This bill would make its provisions retroactive and applicable to any case pending as of January 1, 2026.

(See: https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690)

---

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

a pen register or trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a).  A pen register is defined in the statute as "a device that records or decodes dialing, routing. addressing, or signaling information transmitted by an instrument or facility from which the wire or electronic communication is transmitted, but not the contents of the communication." (Cal. Penal Code § 638.50(b).)  A trap and trace device captures "incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of the wire or electronic communication." (Cal. Penal Code § 638.50(c).)  Neither a pen register nor a trap and trace device are used to collect the contents of a communication, but instead collect "record information" about that communication, sometimes referred to as metadata.

Here, Plaintiffs allege: "Because the Trackers capture Website visitors' 'routing, addressing, or signaling information,' the Trackers constitute a 'pen register' under Section 638.50(b) of the California Invasion of Privacy Act ("CIPA"). (Cal. Penal Code § 638.50(b).)" (FAC, ¶ 3.)  However, if SB690 becomes the new law in California, it will specifically amend Section 638.50(b) to exclude Defendant's alleged conduct as constituting a "pen register" under CIPA.  To wit, the proposed changes to Section 638.50(b) are as follows:

SEC. 5.Section 638.50 of the Penal Code is amended to read:638.50.

For purposes of this chapter, the following terms have the following meanings:

(a)Wire communication and electronic communication have the meanings set forth in subdivision (a) of Section 629.51.

(b)(1)Pen register means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is ~~transmitted,~~ transmitted but not the contents of a communication. ~~Pen register~~

(2) A pen register does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by ~~such~~ the provider, ~~or~~ a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its ~~business.~~ business, or a device or process that is used in a manner consistent with a commercial business purpose.

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

(c)(1) Trap and trace device means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic ~~communication,~~ communication but not the contents of a communication.

(2) A trap and trace device does not include a device or process that is used in a manner consistent with a commercial business purpose.

(d) Prohibited violation has the same meaning as that term is defined in Section 629.51.

(e) Commercial business purpose means the processing of personal information that satisfies either of the following criteria:

(1) Is performed to further a business purpose as defined in subdivision (e) of Section 1798.140 of the Civil Code.

(2) Is subject to a consumers opt-out rights under Sections 1798.120, 1798.121, and 1798.135 of the Civil Code.

(f) Personal information has the same meaning as that term is defined in subdivision (v) of Section 1798.140 of the Civil Code.

(g) Processing has the same meaning as that term is defined in subdivision (y) of Section 1798.140 of the Civil Code.

SEC. 6.

The provisions of this act are retroactive and apply to any case pending as of January 1, 2026.

(See: https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690)

In both *Sanchez* and *Aviles*, the plaintiffs asserted that the defendants' use of a website tool (a "PR/TT beacon") constituted an unlawful pen register or trap-and-trace device under Penal Code § 638.51 because the tools allegedly collected IP addresses and additional information when they visited the defendants' respective websites. In *Sanchez*, the court sustained Cars.com's demurrer without leave to amend, concluding that internet communications do not constitute pen registers or trap and trace devices under the "plain language and legislative intent" of CIPA. (*Sanchez, supra*, 2025 WL 487194, at p. 3.) Instead, those terms "refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such

- 18 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

1  as websites." (*Ibid.*)

2       In examining the legislative history, *Sanchez* explained that when enacting what would become

3  CIPA's pen register provisions in 2015, the California legislature "adopted the same authorization

4  provision" as its federal counterpart, the Pen Register Act. (*Ibid.*) Courts have consistently interpreted

5  that provision of the Pen Register Act to find that the Act "applied only to mechanical, telephone number-

6  tracing technology, not technology used to collect the IP address from a desktop computer." (*Ibid*; *see*

7  *also* Cal. Penal Code § 638.52 and 18 U.S.C. § 1322(a)-(b).) Because CIPA is a penal statute, case law

8  further supports interpreting it "to include only those offenses coming clearly within import of the

9  language, and [not to] be given application beyond [its] plain intent." (*Ibid.*)

10      In *Aviles*, the Court also sustained LiveRamp's demurrer, holding that the plaintiff failed to plead

11 the use of either a pen register or trap and trace device because he did not allege that the website

12 technology "collected the outgoing addressing information from visitors' devices or browsers."

13 (Request for Judicial Notice No. 3 *Aviles v. Liveramp, Inc., Case No. 24STCV19869 Superior Court of*

14 *California, Los Angeles County, Minute Order, dated January 28, 2025 ("Aviles Order")* Plaintiff

15 similarly failed to plead the use of a trap and trace device because he did not allege "that Defendant

16 installed software on Plaintiffs device or browser that collected incoming contact information to

17 Plaintiff's device." Absent such allegations *Aviles* concluded, "Plaintiff ha[d] not alleged anything

18 above and beyond how the internet normally works." (*Licea, supra*, 2024 WL 1698147, at p. 2-3.)

19      These two cases demonstrate California Superior Court judges adopting further reasons as to why

20 CIPA should not apply to internet technologies. This is even more comprehensively addressed by

21 SB690, which would exclude commercial uses of these technologies from CIPA if enacted. SB690 is

22 retroactive, and will benefit defendants whose litigation is active as of January 1, 2026.

23      As of April 30, 2025, SB690 was unanimously passed by the Public Safety Committee of the

24 California State Senate (Ayes 6; Noes 0), and was then re-referred to the Appropriations Committee for

25 further consideration. (See: https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690) The

26 retroactive date of January 1, 2026 set forth in the statute clearly indicates that the California Legislature

27 intends to vote on SB690 in 2025.

28

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

4:25-CV-
02124-DMR

Thus, while a proposed bill which is not yet implemented as law in California cannot serve as binding authority for this Court, the language and history of SB690 clearly establish the intent of the California State Legislature to reign in the abuse of CIPA as a means of imposing civil liability in cases such as this.  Moreover, since SB690 will be retroactive to January 1, 2026, and would render this entire case moot if enacted, if the Court is not inclined to dismiss the action on its merits, at a minimum this case should be stayed until the Legislature votes on SB690 and determines whether it will be the new law of California.  It would be a waste of judicial resources to proceed with costly discovery and law and motion practice in a class action that is likely to be rendered moot by the end of year as the result of legislative amendments to the laws that underly these claims, particularly when those changes are designed specifically to eliminate lawsuits such as this.  The interests of judicial economy are best served by enacting a stay to allow the legislative process to conclude and determine that status of SB690.

Under such procedural circumstances, this Court may properly exercise its judicial discretion to invoke abstention principles to stay this action pending the California State Legislature's pending decision on SB690. (*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 717-722 (1996) [Abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration"].)  Abstention is warranted cases raising issues "intimately involved with [the States'] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law. (*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959).)  The issuance of a stay is warranted in class actions such as this, where the costs of moving forward would exceed the costs of waiting. (*Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) [Stay requires showing that the "probability of error in the class certification decision is high enough that the costs of pressing ahead in the district court exceed the costs of waiting."].)

As such, because SB690 would render this case moot if enacted, if the court is not inclined to dismiss the action on its merits, this case should be stayed through the end of 2025, pending a final vote by the California State Legislature.

## V.    CONCLUSION

For the reasons set forth above, Defendant requests that the Court dismiss the first and only cause

- 20 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

4:25-CV-02124-DMR

1  of action for Violation Of The California Invasion Of Privacy Act, California Penal Code § 638.51(a),

2  without leave to amend.  In the alternative, Defendant requests that the Court stay the proceeding through

3  the end of 2025, pending a final vote by the California State Legislature on SB690.

4

5  Dated:  May 6, 2025                                   MURPHY, PEARSON, BRADLEY & FEENEY

6

7                                                                By _____

8                                                                    Thomas F. Mazzucco
                                                                     John P. Girarde
8                                                                    Christopher R. Ulrich
                                                                     Attorney for Defendant
9                                                                    KELEOPS USA, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -

DEFENDANT KELEOPS USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

4:25-CV-
02124-DMR