Thomas F. Mazzucco - 306681
TFMazzucco@mpbf.com
John P. Girarde – 191518
Jgirarde@mpbf.com
Christopher R. Ulrich - 271288
CUlrich@mpbf.com
Matthew J. Frauenfeld – 336056
Mfrauenfeld@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
550 California Street, Suite 1400
San Francisco, CA 94104-1001
Telephone: (415) 788-1900
Facsimile: (415) 393-8087

Attorneys for Defendant
KELEOPS USA, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND COURTHOUSE**

| | |
|---|---|
| JEFFREY GARON, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELEOPS USA, INC.,<br><br>Defendants. | Case No.: 4:25-cv-02124-DMR<br><br>**DEFENDANT KELEOPS USA, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Date: July 10, 2025<br>Time: 1:00 p.m.<br>Court: 4<br>Judge: Hon. Donna M. Ryu |

## I. INTRODUCTION

Plaintiff Jeffrey Garon's opposition fails to cure the fundamental deficiencies of the First Amended Complaint ("FAC") and instead doubles down on his flawed interpretation of the California Invasion of Privacy Act ("CIPA"). Plaintiff seeks to transform the statute—intended to regulate telephone surveillance—into a sweeping regime that penalizes the use of commonplace website analytics. The arguments presented in the opposition not only mischaracterize the legislative purpose of California Penal Code § 638.50 et seq., but also rely on distinguishable federal cases while disregarding directly applicable California state court authority.

The FAC does not allege that Defendant Keleops USA, Inc. ("Keleops") used a "pen register" as

defined by CIPA, nor that the code embedded in Gizmodo.com constitutes a statutorily prohibited device or process. In fact, the FAC fails to allege that any "dialing, routing, addressing, or signaling information" from an outgoing communication was recorded—an essential element under Penal Code § 638.50(b). The statute's definition, rooted in historical concerns about landline telephone surveillance, cannot reasonably be stretched to encompass passive IP address logging via browser requests.

Multiple California courts have recently dismissed similar CIPA claims based on nearly identical allegations. Their reasoning is rooted in the narrow construction of penal statutes and the Legislature's demonstrated intent to exclude internet-based commercial tracking from CIPA's reach. These holdings decisively refute the arguments Plaintiff now raises for the first time in opposition.

Moreover, California State Senate Bill 690, Crimes: Invasion of Privacy (SB690) continues to work its way through the California Legislature without any major opposition. SB690 would render this case moot if it is enacted, and thus it would waste judicial resources to proceed with costly discovery and law and motion practice in a class action that is likely to be rendered moot by the end of year. Under such circumstances, this Court may exercise its judicial discretion to invoke abstention principles and stay this action pending the Legislature's final vote on SB690.

## II. PLAINTIFF'S CLAIMS ARE INCOMPATIBLE WITH CIPA'S TEXT AND PURPOSE

### A. The FAC Fails to Allege the Use of a "Pen Register".

Penal Code § 638.50(b) defines a pen register as a device or process that records or decodes the routing or signaling information of an outgoing communication—but not the contents. The FAC does not allege facts satisfying this definition. Plaintiff contends that the mere collection of IP addresses and device/browser metadata constitutes the recording of "addressing" or "routing" information. This contention misapprehends both the statute and relevant precedent.

Critically, California courts have already rejected the theory that routine web tracking—such as that alleged here—constitutes the use of a pen register. In *Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025), the court held that CIPA applies only to devices or processes used for telephonic surveillance. The plaintiff there alleged that trackers collected IP addresses from website visitors. The court found such tracking outside the statute's scope because there was no dialing or routing of telephone numbers, and IP address collection was integral to normal web functionality.

Similarly, in *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024), the court rejected claims that the use of analytics code on a retailer's website constituted a CIPA violation, emphasizing that such tools do not record the type of routing information contemplated by the statute. Plaintiff's attempt to distinguish these cases fails. The FAC here makes substantially the same allegations—namely, that website visitors' IP addresses and browser headers were passively recorded by third-party trackers.

Likewise, in *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025), the Northern District of California dismissed a CIPA claim arising from the use of third-party analytics on a news website. The court held that allegations of IP address collection, browser data, and generalized identifiers failed to establish a concrete privacy injury under Article III. *Id.* at 5. Relying on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the court reaffirmed that even statutory violations must result in real, concrete harm to confer standing. *Khamooshi*, 2025 WL 1408896, at 5. The decision in *Khamooshi* further reinforces that website tracking alone—without the disclosure of sensitive or personally identifiable information—does not implicate the type of harm actionable under privacy laws like CIPA. *Id.* The court distinguished between protected privacy interest data and general technical data like IP addresses and browser configurations, holding that the latter do not give rise to a cognizable injury. *Id.* The Court noted that a plaintiff lacked article III standing when they are "not seeking to remedy any harm to themselves but instead are merely seeking to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages) …Those are not grounds for Article III standing." *Id.* at 4. (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

This observation is particularly salient here. The boilerplate nature of the FAC is underscored by its erroneous reference to a completely unrelated website. Specifically, paragraph 97 alleges that "the first time a user visits Defendant's ***Wired*** Website, the user's browser sends an HTTP request to Defendant's server…", which has no relevance to the Defendant or the Gizmodo.com website at issue in this case. (FAC ¶ 97, at p. 28.) This apparent cut-and-paste error suggests that Plaintiff's counsel recycled a template complaint used in unrelated lawsuits. Such drafting undermines the credibility of Plaintiff's claim and supports the conclusion that this lawsuit is not based on any individualized harm, but rather part of a broader campaign to leverage statutory damages in the absence of concrete injury—

precisely the kind of "cash grab" litigation the *Khamooshi* court rejected. See *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 1408896, at *5 (N.D. Cal. May 13, 2025).

Here, Plaintiff's allegations are materially indistinguishable from those rejected in *Sanchez*, *Licea*, and *Khamooshi*. The FAC asserts that Defendant employed common website analytics tools that collect routine technical data such as IP addresses and browser settings. These are the same types of allegations found insufficient to state a CIPA claim in *Sanchez* and *Licea*, and the same category of technical data found inadequate to establish Article III standing in *Khamooshi*. The courts in those cases uniformly held that such data collection does not involve the use of a pen register under CIPA and does not infringe upon a protected privacy interest. Accordingly, the FAC here should be dismissed for the same reasons.

**B. Browser Code Is Not a "Device or Process" Under CIPA.**

Plaintiff argues in opposition that JavaScript code qualifies as a "process" under CIPA. This argument is inconsistent with the statute's text and the legislative history. The Legislature enacted CIPA's pen register provisions in 2015 to codify law enforcement's procedures for telephone surveillance—not to regulate standard web development practices.

While Plaintiff relies on *Greenley v. Kochava, Inc.*, 2023 WL 4833466 (S.D. Cal. 2023), that decision involved mobile applications surreptitiously collecting precise location data. The *Greenley* court explicitly limited its findings to apps that gathered GPS coordinates via persistent, concealed means. Here, by contrast, the FAC alleges only that Gizmodo.com's visible and functional website code triggered browser-based tracking tools.

Plaintiff cites no authority holding that the use of common browser scripts constitutes a "pen register." To the contrary, courts interpreting both California and federal law have held that analytics code embedded in websites is not the kind of technology contemplated by surveillance statutes. See *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) (routine server logging of IP addresses is exempt from federal pen register regulation).

Courts outside California have reached similar conclusions under analogous wiretap statutes. For example, in *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 848 (2024), the Massachusetts Supreme Judicial Court held that website browsing activity does not constitute a "communication" for purposes

of liability under the Massachusetts wiretap law. The court reasoned that a user's interactions with a website, such as clicks and page views, are not the type of interpersonal exchanges protected by the statute. In addition, the court emphasized that because the Massachusetts statute carries both civil and criminal penalties, it must be interpreted under the rule of lenity. *Id.* at 847. The court therefore construed the statute narrowly and declined to extend its reach to conduct common in digital commerce. *Id.* at 848. This reasoning is equally applicable under CIPA, as it confirms that routine website interactions—such as clicks, navigation, and page loads—do not constitute the type of interpersonal communications that trigger interception liability under wiretap statutes.

Moreover, the FAC's attempt to characterize routine website analytics tools as a "device" under Penal Code § 638.50(b) stretches the statutory language beyond its intended meaning. The statute, modeled in part on the federal Wiretap Act, requires that any acquisition of routing or addressing information occur "through the use of any electronic, mechanical, or other device." In *Crowley v. CyberSource Corp.*, the court emphasized that simply receiving a user's voluntary electronic transmission does not constitute an "interception" using a device under the Wiretap Act. 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001). The court reasoned that treating an ordinary website or email server as a device would lead to absurd results, such as criminalizing standard server-side processing. *Id.* The court concluded that an online retailer who received information via its own systems acted as a participant in the communication and did not use a separate device to intercept it. *Id.*

That reasoning is equally applicable under CIPA. If every embedded script or server-side function that receives user HTTP requests were deemed a "device" under § 638.50(b), nearly every website operator in California could be exposed to liability for ordinary internet functions. Such a reading would erase the distinction CIPA draws between surveillance tools and the essential infrastructure of the web. Under *Crowley* and consistent with the rule of lenity, the term "device" must be interpreted narrowly to avoid criminalizing routine online activity.

### C. The Rule of Lenity Requires Dismissal.

CIPA is codified within the California Penal Code and expressly carries both civil and criminal penalties, including potential imprisonment. See Cal. Penal Code §§ 638.51(c), 638.55(a). Section 638.51(c) states that a violation is punishable by a fine of up to $2,500, imprisonment in county jail for

up to one year, or imprisonment pursuant to Penal Code § 1170(h), or both. Similarly, civil actions are authorized under § 638.55(a), which provides for injunctive relief and damages. In light of these dual remedies, any ambiguity in CIPA's scope must be construed narrowly in favor of defendants under the rule of lenity. This principle—rooted in fundamental fairness—mandates that penal statutes be interpreted so that no person is punished for conduct that is not clearly and unambiguously proscribed by law. When only two reasonable interpretations of a penal statute stand in relative equipoise, ambiguity in the statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. *People v. Soria*, 48 Cal.4th 58, 65 (2010).

Applying this rule of lenity, courts must interpret Penal Code § 638.50 consistent with its historical focus on *telephone-based* surveillance tools—not internet technologies. As the *Licea* court noted, "[t]he Penal Code commands construction of its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice', but at the same time, penal statutes include only those offenses coming clearly within the import of the language, and will not be given application beyond their plan intent." *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at p. 4 (citing *DeMille v. Am. Fed'n of Radio Artists* (1947) 31 Cal. 2d 139, 156; Pen. Code § 4.

Plaintiff's expansive reading of CIPA—under which any website that records IP addresses using common analytics tools could be deemed to operate a pen register—violates this canon of construction. Because Plaintiff's interpretation would subject vast swaths of ordinary commercial activity—not contemplated by the legislature—to potential sanctions, it must be rejected.

**D. Plaintiff's Suggestion that Citing Unpublished Opinions is Sanctionable is Meritless**

Plaintiff's assertion that Defendant's reference to unpublished trial court opinions is sanctionable lacks any basis in law. California Rule of Court 8.1115 prohibits citation of unpublished *appellate* decisions, not unpublished *trial court* rulings. Moreover, there is no rule barring citation of such rulings in federal court, where they are routinely considered as persuasive authority—particularly in the absence of controlling precedent.

Defendant cited cases such as *Licea* and *Sanchez* as persuasive evidence of how California courts are currently construing CIPA in analogous circumstances. Federal courts may properly consider these rulings when predicting how California courts are likely to resolve unsettled issues of state law. See

*Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1014 n.8 (N.D. Cal. 2017), aff'd, 919 F.3d 1154 (9th Cir. 2019). There is nothing improper or sanctionable in this practice.

## III. KELEOPS IS EXEMPT UNDER CIPA § 638.51(b)

Even if the FAC alleged a qualifying device or process (it does not), CIPA § 638.51(b)(1) provides an exemption for service providers who collect routing information in connection with operating or maintaining electronic communication services. Plaintiff does not dispute that Gizmodo.com must collect IP addresses to deliver content to visitors. This fundamental web functionality falls squarely within the statutory exemption.

Notably, Plaintiff's own counsel's law firm, Bursor & Fisher, operates a website that discloses in its privacy policy the use of third-party trackers and analytics tools, including cookies and web beacons. See https://www.bursor.com/privacy-terms/.[1] This undermines the suggestion that such technologies are inherently unlawful or outside the realm of expected internet activity.

The Ninth Circuit confirms that users have no reasonable expectation of privacy in IP addresses, and that service providers may collect such information to facilitate web communications. See *United States v. Forrester* (9th Cir. 2008) 512 F.3d 500, 510. The Opposition attempts to sidestep this by characterizing Defendant as a non-provider, but the FAC itself alleges that Keleops owns and operates Gizmodo.com—a free, content-based news and entertainment website made available to the public.

Plaintiff may argue that Keleops is not an "electronic communication service" provider in the narrow sense of telecommunications infrastructure, but California courts have not adopted such a restrictive reading of the term. Plaintiff alleges that Keleops uses common website tracking tools on Gizmodo.com that collect IP addresses and other metadata. However, these functions are integral to the operation, maintenance, and testing of Gizmodo.com as a publicly available news and media platform. Tracking IP addresses, for instance, is a routine method of managing server load, detecting malicious activity, enforcing content access policies, and gathering performance analytics.

The legislative design of § 638.51(b) reflects a clear intent to avoid criminalizing or penalizing

[1] "To the extent permitted under applicable law, our Site uses cookies and similar technologies to distinguish you from other users of our Site and enable us and third parties to automatically collect information about how you access and use our Sites, and about the device you use to access our Sites. This helps us to provide you with a good experience when you browse our Site and also allows us to customize and improve our Site." *Id.*

the routine and necessary operations of internet service providers and content platforms. Construing the statute otherwise would expose virtually all website operators to litigation for engaging in basic server functionality—an outcome the Legislature did not intend and one the rule of lenity is designed to prevent.

Dismissal is therefore warranted under § 638.51(b), independent of the question whether the alleged tracking code qualifies as a pen register.

## IV. LEGISLATIVE DEVELOPMENTS CONFIRM CIPA DOES NOT APPLY

Senate Bill 690 ("SB690"), now pending in the California Legislature, will amend CIPA to expressly exclude from liability the use of routing or addressing technologies for commercial purposes, and apply retroactively to all pending cases as of January 1, 2026. The bill has cleared committee review and is advancing toward passage.

SB690 confirms what courts have already begun to hold: that CIPA was never intended to regulate the kinds of internet communications at issue here. As in *Aviles v. Liveramp, Inc.*, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025), Plaintiff's claims rest on a misapplication of CIPA to commercial web technologies, and legislative clarification is imminent. SB690 would amend CIPA to clarify that its restrictions do not apply to internet-based commercial data processing—exactly the type of conduct alleged in the FAC. Notably, the bill:

- Explicitly excludes from the definitions of "pen register" and "trap and trace device" any process used for a "commercial business purpose";
- Defines "commercial business purpose" to include the ordinary use of website analytics and user interaction data;
- Applies retroactively to all cases pending as of January 1, 2026.

The Legislature has made clear through this measure its intent to curb abusive litigation based on expansive and unintended interpretations of CIPA.

In light of these developments, judicial economy strongly favors a stay. Proceeding with discovery and class certification under a statute that may imminently be amended to bar Plaintiff's claim would waste party and court resources. Federal courts routinely grant stays when legislative clarification is pending and would significantly affect the dispute. See *Quackenbush v. Allstate Ins. Co.* (1996) 517 U.S. 706, 717–22.

Here, the proposed statutory changes are not speculative—they are progressing through the legislative process with stated bipartisan support and are tailored to address the precise theory Plaintiff seeks to advance. If not dismissed, this action should be stayed through the end of 2025 to allow the California Legislature to complete its work.

## V. CONCLUSION

For the foregoing reasons, including the weight of recent state court authority, the lack of any plausible allegations supporting the use of a pen register, and the applicability of the statutory exemption, and the rule of lenity requiring that the defendant be given the benefit of every reasonable doubt on questions of interpretation. Plaintiff's FAC should be dismissed with prejudice. In the alternative, the action should be stayed through the end of 2025 pending final legislative action on SB690, which would retroactively moot Plaintiff's claim.

Dated: May 27, 2025

MURPHY, PEARSON, BRADLEY & FEENEY

By Thomas F. Mazzucco
Thomas F. Mazzucco
John P. Girarde
Christopher R. Ulrich
Matthew J. Frauenfeld
Attorney for Defendant
KELEOPS USA, INC.