**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY GARON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELEOPS USA, INC.,<br><br>Defendants. | Case No. 4:25-CV-2124-DMR<br><br>**PLAINTIFF'S STATEMENT OF RECENT DECISION**<br><br>Courtroom: 4<br>Judge: Hon. Donna M. Ryu |

Pursuant to Local Civil Rule 7-3(d)(2), Plaintiff Jeffrey Garon ("Plaintiff") respectfully submits this Statement of Recent Decision regarding the pending Motion to Dismiss the First Amended Complaint. *See* ECF Nos. 11-12. Plaintiff brings to the Court's attention a recent decision denying a motion to dismiss in *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025). A copy of the order is attached hereto as **Exhibit 1**. The decision is relevant to the Parties' respective arguments regarding whether the alleged Trackers are 'pen registers' under Cal. Pen. Code § 638.50(b).

Dated: July 22, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**

2025 WL 1939957
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

JONATHAN GABRIELLI, Plaintiff,
v.
MOTOROLA MOBILITY LLC, Defendant.

Case No. 24-cv-09533-JST
|
Filed 07/14/2025

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE**

JON S. TIGAR United States District Judge

***1** Before the Court are Defendant Motorola Mobility LLC's ("Motorola") motion to dismiss, ECF No. 12, and motion to strike, ECF No. 13. The Court will grant in part and deny in part Motorola's motion to dismiss, and it will deny the motion to strike.

## I. BACKGROUND

Plaintiff Jonathan Gabrielli brings this proposed class action against Motorola based on allegations that Motorola violated his privacy rights through deceptive tracking practices on its website involving the use of cookies. For the purpose of resolving the motion to dismiss, the Court accepts as true the allegations in the complaint, ECF No. 1. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Gabrielli visited Motorola's website multiple times to "browse information about Motorola's products" in or around February 2022, December 2022, November 2023, and January 2024. ECF No. 1 ¶ 70. When he visited the Motorola website, he was presented with a pop-up cookie consent banner. The banner stated that "We use cookies and similar technologies to personalize content and ads and analyze our traffic. By browsing our site or by selecting 'X', you agree to our use of cookies and our sharing of information with our partners." *Id.* ¶ 71. The banner also presented a link to Motorola's Website Privacy Statement and offered Gabrielli the option to "Reject All non-essential cookies." *Id.* ¶¶ 23–24, 71.

Tabular or graphical material not displayable at this time.

*Id.* at 10.

Despite clicking the "Reject All" option, however, Gabrielli learned that Motorola's website continued to load third-party scripts that placed tracking cookies on his device and transmitted them to companies like Google, TikTok, Amazon, Howl Technologies, and Emplifi. *Id.* ¶¶ 2, 22, 72–76. These cookies collect detailed information about users' activity on the website, including their browsing history, user inputs, demographic information, shopping behavior, referring URLs, session information, IP addresses, geolocation data, and device information. *Id.* ¶¶ 22, 27, 44, 50. The data is transmitted in real time and used to build behavioral profiles and serve targeted advertising. *Id.* ¶¶ 4, 19, 91.

At the relevant times of this complaint, Motorola's Website Privacy Statement—linked in its website welcome banner—stated:

> Where required by applicable law, Motorola will acquire consent from you prior to using certain cookies during your Motorola website experience and/or will offer you the opportunity to choose which types of cookies to enable or disable.
>
> ...
>
> Motorola and its service providers, including Google and DoubleClick, use cookies to report how your ad impressions, other uses of ad services, and interactions with these ad impressions and ad services are related to visits to our website. If you do not want to have this information used for serving you interest-based ads, you may opt-out by following the steps below.
>
> ...
>
> However, if you prefer not to store cookies, you can choose to ... Utilize the cookie consent and control options offered by a Motorola website (if available and as required by applicable law)[.]

***2** *Id.* ¶ 33 (quoting Motorola Mobility Website Privacy Statement, available at https://help.motorola.com/hc/apps/privacy/web/2023-05/en-us/ (last accessed May 1, 2023)); *see also* ECF No. 12-3.

Gabrielli alleges that, had he known his data would still be collected despite rejecting cookies, he would not have used the website or would have used it differently. ECF No. 1 ¶ 76.

Based on the non-consensual collection and transmission of his data, Gabrielli asserts nine causes of action, on behalf of himself and a class of California residents who visited the Motorola website and attempted to reject non-essential cookies during the four years preceding the filing of the complaint: (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631; (4) use of a pen register in violation of CIPA, California Penal Code § 638.51; (5) common law fraud; (6) unjust enrichment; (7) breach of contract; (8) breach of implied covenant of good faith and fair dealing; and (9) trespass to chattels. He seeks damages as well as injunctive relief.

## II. JURISDICTION

Gabrielli alleges that this Court has jurisdiction under 28 U.S.C. § 1332(d).

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court. *See* Fed. R. Civ. P. 12(b)(1). If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction, and the suit must be dismissed under Rule 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A court addressing a facial attack must confine its inquiry to the allegations in the complaint. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

### B. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), the court must dismiss an action when it does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

2008). Where "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.' " *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and citations omitted).

***3** "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* Because the applicable state "statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

Due process permits a court to exercise personal jurisdiction over a defendant only when "the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (internal quotation marks and citation omitted)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

"A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (emphasis omitted). General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[matic] ... bases for general jurisdiction.' " *Id.* at 137 (quoting *Goodyear*, 564 U.S. at 924). If a business is not incorporated in, and does not have its principal place of business in a forum state, "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

"Specific jurisdiction is very different." *Bristol-Myers*, 582 U.S. at 262. For the court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id.* "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

Because California's long-arm jurisdictional statute authorizes jurisdiction to the fullest extent permitted by the Constitution, *see* Cal. Code Civ. P. § 410.10, the central question is whether the defendant has "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

The Ninth Circuit has established a three-part inquiry, referred to as the minimum contacts test, to determine whether a court has specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> ***4** (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

**C. Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072. However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

**IV. REQUEST FOR JUDICIAL NOTICE**

"As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.' " *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "When 'matters outside the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56," unless those matters satisfy the "incorporation-by-reference doctrine" or the standard for "judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting Fed. R. Civ. P. 12(d)). The Ninth Circuit has expressed concern with the practice of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* The Ninth Circuit also cautioned that "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999.

***5** "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,' " i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' " *Id.* (quoting Fed. R. Evid. 201(b)). "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity ... is not contested," *Lee*, 250 F.3d at 688 (alteration in original) (quotation marks and citation omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Motorola requests that the Court consider four documents under the incorporation-by-reference doctrine or take judicial notice of those documents: (1) a copy of Motorola's "Website Privacy Statement" as of May 1, 2023; (2) a copy of Motorola's website "Terms of Use"; (3) California Bill Analysis, Assembly Committee, 2015-2016 Regular Session, Assembly Bill 929; and (4) the second amended complaint in the matter of *Rodriquez v. Fountain9, Inc.*, 24STCV04504, pending in the Superior Court of California, for the County of Los Angeles. ECF No. 12-1.

The Court finds that Exhibit A has been incorporated by reference. Gabrielli does not oppose Motorola's request that Exhibit A be judicially noticed and agrees that the complaint explicitly relies upon Motorola's Website Privacy Statement.

The Court, however, finds that Exhibit B has not been incorporated by reference. Motorola argues that the "Terms of Use" have been incorporated by reference because they combine with the Website Privacy Statement to form a single written agreement, and the complaint repeatedly references the Website Privacy Statement. ECF No. 12-1 at 5–6. But while Motorola is correct that the complaint refers to the Website Privacy Statement, it does *not* refer to the Terms of Use, and the Website Privacy Statement similarly makes no mention of the Terms of Use. And to the extent that Motorola argues that Exhibit B is judicially noticeable, "this Court rejects the notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). Unlike government websites, the websites of private parties "are not inherently reliable," and that "is particularly so when a party seeks to introduce documents it created and posted on its own website, as [Motorola] does here. When a non-governmental entity to seek judicial notice of its paper records, the request is properly rejected because such documents are subject to reasonable dispute." *Id.* at 1032–33 (citing *Ladore v. Sony Comput. Entm't Am., LLC*, 75 F.Supp.3d 1065, 1074 (N.D. Cal. 2014)).

As to Exhibits C (California Bill Analysis) and D (Second Amended Complaint in *Rodriquez v. Fountain9, Inc.*), the Court takes judicial notice of the existence of these government documents, but not the truth of the matters asserted in those documents. *See Salas v. Gomez*, No. 14-CV-01676-JST, 2016 WL 3971206, at *5 (N.D. Cal. July 25, 2016); *see also In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (explaining that the court "may take judicial notice of the existence of unrelated court documents ... it will not take judicial notice of such documents for the truth of the matter asserted therein").

## V. DISCUSSION

### A. Standing

***6** "Article III of the Constitution confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' " *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." *Id.* "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Motorola argues that Gabrielli has failed to plead an injury-in-fact—including by failing to identify what specific information was transmitted or what damages he suffered—and thus has no standing. *See* ECF No. 12 at 18–19. It also appears to argue that Gabrielli did not suffer any injury-in-fact because he was a "tester" who sought out privacy violations and thus expected his privacy to be invaded. *See* ECF No. 27 at 9; ECF No. 35 at 3. These arguments fail.

"[V]arious intangible harms can ... be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. An "exact duplicate" is not required, and the Supreme Court has recognized that "intrusion upon seclusion" is included among those traditionally recognized harms. *Id.* at 2204; *see* Restatement (Second) of Torts § 652B cmt. *b.* (1977) (including "tapping ... telephone wires" as an example of intrusion upon seclusion). In that vein, the Ninth Circuit has written that "[v]iolations of the right to privacy have long been actionable at common law," and that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person.' " *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020) (first quoting *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019); and then quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)); *see also* Restatement (Second) of Torts § 652B cmt. *a.* (explaining that intrusion upon seclusion "does

not depend upon any publicity given to the person whose interest is invaded or to his affairs" but rather "consists solely of an intentional interference with his interest in solicitude or seclusion"). Statutes such as CIPA thus "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*; *accord In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, *tracks* a person's internet browser activity without authorization." (emphasis added)).

Gabrielli alleges that Motorola "permits the Third Parties to use cookies and other tracking technologies to collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Compl. ¶ 91. Contrary to Motorola's argument that Gabrielli merely described data that Motorola *could have* collected, the complaint alleges that Motorola in fact ignored Gabrielli's rejection of cookies and "continued to cause the placement and/or transmission of cookies along with user data, including those involved in providing personalized content, advertising, analytics, and social media content from the Third Parties on his device. In doing so, Defendant permitted the Third Parties to track and collect Plaintiff's Private Communications as Plaintiff browsed the Website." *Id.* ¶ 75. Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) (explaining that under the contextual analysis of determining whether the collection of data gives rise to a concrete injury, Google's storage of users' browsing data with unique identifiers to send users personalized ads was sufficient to establish that the plaintiffs suffered concrete harm); *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1138 (E.D. Cal. 2021).

***7** As for Motorola's "tester" argument, Motorola seeks to apply the cases dismissing invasion of privacy claims brought by tester plaintiffs on the grounds that such persons actually seek out invasions of privacy and so have no reasonable expectation of privacy in their personal information, and thus no injury sufficient to confer standing. *See, e.g., Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025). But these cases do not apply here, given that Gabrielli pleads that he is *not* a tester and that he visited Motorola's website to "browse information about Motorola's products" and not to seek out privacy violations. ECF No. 1 ¶ 70; *see also Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 at *1 (C.D. Cal. April 4, 2025) (no dispute that the plaintiff was a tester); *id.*, ECF No. 34 ¶ 4 (plaintiff pleading that she was "a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law"). Because the Court considers only the facts alleged in the complaint and accepts those facts as true, there is, as a threshold matter, no basis to consider Gabrielli's alleged status as a tester in determining his standing.

### B. Personal Jurisdiction

The parties' dispute over personal jurisdiction boils down to whether Motorola has engaged in conduct relating to California sufficient for the Court to exercise specific personal jurisdiction over it in this action. Motorola argues that merely operating a national website accessible in California does not establish purposeful direction toward the forum state.

#### a. Purposeful Direction

The first prong of the minimum contact test to determine whether a court may exercise specific personal jurisdiction is often called the "purposeful availment" prong. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The phrase "purposeful availment," however, is often used "in shorthand fashion, to include both purposeful availment and purposeful direction." *Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract." *Id.* (citation omitted). "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (citation omitted). Because Gabrielli's core claims—CIPA and invasion of privacy—sound in tort,

the Court applies a purposeful direction analysis. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) ("For claims sounding in tort, like the privacy and data use violations Briskin asserts here, we most often employ a purposeful direction analysis.").

"The purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (internal citation omitted). It is undisputed that Motorola intentionally operates its own website, and thus, Gabrielli's claims satisfy the first element. *See Schwarzenegger*, 374 F.3d at 806 (finding that a defendant acts intentionally when he acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act"). With regard to the third element, "[a] defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." *Will Co., Ltd. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022), *overruled on other grounds by Briskin*, 135 F.4th 739. Here, Motorola mainly argues that Gabrielli has not alleged facts showing that it caused *any* harm to Gabrielli or other individuals in California. *See* ECF No. 12 at 22. But as the Court explained in its standing analysis, taking Gabrielli's allegations as true, Motorola was aware that it was collecting the personal information of California users without their consent. ECF No. 1 ¶¶ 12–13, 75, 91. The third element is therefore satisfied.

***8** The remaining element concerns whether Motorola expressly aimed its conduct at the forum state. "More than two decades ago," the Ninth Circuit "recognized a distinction between 'passive' websites that merely make information available to visitors and 'interactive' websites, where 'users can exchange information with the host computer when the site is interactive.' " *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). Mere passive operation of a website is insufficient to demonstrate express aiming. *Briskin*, 135 F.4th at 752. Rather, there must be "something more" than just operating the passive website to show express aiming at a forum state. *Id.*

The Ninth Circuit most recently addressed the question of whether operating a passive website that collects personal data from its users constitutes "something more" in *Briskin.* There, the court found that the plaintiff had made a sufficient showing of jurisdictional facts to establish that Shopify purposely directed its conduct toward California. *Id.* at 755. It reasoned that Shopify, in its regular course of business, was "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only the California consumers' payment information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent." *Id.* at 755–56. And it found that the effect on the plaintiff was not "mere happenstance" because Shopify "allegedly knew the location of consumers like Briskin either prior to or shortly after installing its initial tracking software onto their devices," and thus Shopify's "surreptitious interception of Briskin's personal identifying information certainly is a relevant contact with the forum state." *Id.* at 756, 757.

Here, Motorola attempts to distinguish *Briskin* by arguing that Gabrielli does not allege that he purchased any goods or services from Motorola in California or that Motorola "compiled or sold any data to any merchants, much less including California merchants." ECF No. 35 at 3–4. The Court does not read the express aiming requirement so narrowly, however, and finds that Gabrielli has sufficiently alleged jurisdictional facts to establish express aiming.

First, Gabrielli argues that Motorola purposefully designed its website to target and collect data from California users, including by claiming compliance with California law in its Privacy Statement. ECF No. 22 at 14–15. Motorola's website Privacy Statement specifically identifies California privacy law and claims to comply with it—without specifically mentioning the laws of any other state. *See* ECF No. 12-3 at 3 ("Motorola does not use or disclose sensitive personal information of consumers for purposes other than those specified at Section 7027(m) of the California Consumer Privacy Act Regulations."). While the Ninth Circuit in *Briskin* made clear that "differential targeting" was no longer a *requirement* for express aiming, it expressly stated that "such treatment may serve as evidence that a defendant expressly aimed its conduct toward the forum state," as it did in prior cases. *Briskin*, 135 F.4th at 758 n.17. Motorola's specific identification of California privacy law in its website Privacy Statement thus serves as evidence of express aiming. *See Will Co.*, 47 F.4th at 925–26 (finding that when a website specifically claims to be legally compliant with a single forum state's laws, it is appealing to the audience in that forum state and is expressly

aiming its site at that forum). Second, as in *Briskin*, Gabrielli alleges that Motorola knowingly collected the data of California residents because its website allegedly collected IP addresses and geolocation data that revealed where the users resided. ECF No. 31-2 at 12 (citing ECF No. 1 ¶¶ 12–13); *see Briskin*, 135 F.4th at 756.

***9** Accordingly, Gabrielli has alleged sufficient jurisdictional facts to show that Motorola purposefully directed its contacts with California.

#### b. Arise Out of or Relate to Forum Activities

The second prong of the minimum contacts inquiry considers whether the plaintiff's claims " 'arise out of or relate to the defendant's contacts with the forum.' " *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362.

Motorola does not directly contest that the second prong of the minimum contacts test is met here. And the Court finds that the present suit "arise[s] out of or relate[s] to the defendant's contacts with the forum" because Gabrielli's claims that his data was collected without his consent relates to Motorola's connection with the forum—the targeting of California users and collection of data from California users. *See id.* at 359.

#### c. Fair Play and Substantial Justice

Once the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp.*, 471 U.S. at 476–78). Motorola does not contest that the exercise of jurisdiction would be reasonable if the other elements are met.

Consequently, the Court has personal jurisdiction over Motorola. It now turns to Motorola's remaining arguments under Rule 12(b)(6).

### C. Failure to State a Claim

#### 1. Privacy Claims

Claims for intrusion upon seclusion and invasion of privacy under the California Constitution have "similar elements," and courts therefore "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). When evaluating whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)). The question is "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.' " *Id.* (quoting *Hernandez*, 47 Cal. 4th at 286).

Motorola argues that Gabrielli's invasion of privacy and intrusion upon seclusion claims must be dismissed because (1) Gabrielli has not alleged that Motorola intended to continue using the alleged cookies, as the continued use of cookies was likely due to "improper button functioning;" (2) that the alleged invasions of privacy do not meet the high bar for an egregious breach of social norms; and (3) the complaint alleges only that third-party cookies could track certain information and not that it did. ECF No. 12 at 23–24. These arguments are unpersuasive and contrary to the facts as alleged in the complaint.

***10** First, Motorola's assertion that the alleged continued usage of cookies was due to a "bona fide error," ECF No. 12 at 23, "is an inherently factual contention that cannot properly be resolved on a motion to dismiss." *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1131 (N.D. Cal. 2005). And the Court rejects Motorola's argument that "common sense" dictates that the button rejecting all cookies must have failed to function properly, ECF No. 27 at 13—as opposed to a plain reading of the complaint suggesting that Motorola intentionally disregarded Gabrielli's having opted out and continued to use cookies on his device. *See* ECF No. 1 ¶ 2 ("Defendant's promises [of allowing users to reject all non-essential cookies] are outright lies, designed to lull users into a false sense of security."). Because Motorola's argument is based on a dispute of facts, the Court declines to dismiss Gabrielli's claims on this basis, as it must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072.

Second, it is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). When determining whether an invasion is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (Cal. 2009). Given the factually intensive nature of the inquiry, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799. Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests" can the "question of [a serious or highly offensive] invasion [ ] be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40. Gabrielli has alleged enough in the complaint such that the Court cannot, at least at this stage of the proceedings, conclude as a matter of law that the alleged tracking of Gabrielli's IP address, browsing history, and user preferences is not highly offensive. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942–43 (N.D. Cal. 2023).

Third, contrary to Motorola's contentions that Gabrielli only alleges what Motorola's cookies *could* track, the complaint specifically alleges that Motorola "caus[ed] third party cookies to be stored on consumers' devices and browsers that enabled the Third Parties to track and collect Plaintiff's and Class member's Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data ...." ECF No. 1 ¶ 164; *see also id.* ¶ 27. The Court therefore rejects Motorola's argument on this basis and accordingly denies Motorola's motion to dismiss Gabrielli's invasion of privacy claims.

### 2. CIPA Claims

#### a. Section 631(a)

Section 631(a) creates four avenues for relief:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument";
>
> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";
>
> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and
>
> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

***11** *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).

Gabrielli asserts a claim against Motorola based on the fourth avenue—alleging that Motorola has aided third parties in collecting Gabrielli's information. Motorola argues that Gabrielli's CIPA wiretapping claim should be dismissed because (1) the complaint fails to establish intent, as Motorola's storage of cookies was due to a bona fide error of a malfunctioning button; and (2) Motorola cannot be liable for eavesdropping on its own communications. ECF No. 12 at 25–26. Neither of these arguments is persuasive.

First, as explained above, Motorola's assertion that the alleged continued usage of cookies was due to a "bona fide error," ECF No. 12 at 26, is an improper contention of fact at this stage. And the complaint sufficiently alleges that Motorola intentionally operated its website and assisted third parties in collecting Gabrielli's information. *See, e.g.*, ECF No. 1 ¶¶ 1–3, 14, 19–21; *see also Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *8, 10 (S.D. Cal. Feb. 13, 2025) (explaining that the Ninth Circuit has interpreted the intent standard under the federal Wiretap Act to require only an act being done on purpose, rather than done with the knowledge that it is unlawful, and then applying that analysis to also reject a challenge to CIPA Section 631). Second, the Court rejects Motorola's passing contention that it cannot eavesdrop on its own communications because Gabrielli alleges that the cookies are collecting information on his private activity and information outside of Motorola's website—not his communications involving Motorola.

**b. Section 638.51**

Motorola argues that Gabrielli has failed to state a claim under Section 638.51 of CIPA because the section applies only to telephones, and Gabrielli has not alleged that the device he used to access Motorola's website qualifies as a telephone. *See* ECF No. 12 at 26–27.

Specifically, Motorola argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. ECF No. 12 at 26. The Court disagrees. Section 638.50 defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication"—with no limitation to telephones. Cal. Penal Code § 638.50(b). If the drafters of Section 638.50 had intended for "pen register" to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations. *See, e.g.*, Cal. Penal Code §§ 631(a), 632.7. For these reasons, other federal courts have interpreted the plain language of Section 638.50 expansively to find that "pen registers" includes data collection tools beyond those the record information from telephones. As the court in *Greenley v. Kochava, Inc.*, explained:

> ***12** Moreover, the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—"dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but it is vague and inclusive as to the form of the collection tool—"a device or process." *See* Cal. Penal Code § 538.50(b). This indicates courts should focus less on the form of the data collector and more on the result. Thus, the Court applies the plain meaning of a "process" to the statute. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique "fingerprinting." (Am. Compl. ¶¶ 67, 74.) Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a "pen register."

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *see also Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024) (citing *Greenley* to reject the argument that CIPA's pen register definition applies only to telephone technology and to hold that internet browser trackers can constitute pen registers).

The cases cited by Motorola do not hold to the contrary; rather, they interpret those sections of CIPA that explicitly include language limiting application of those statutes to the "telephone." *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104–05 (C.D. Cal. 2023) (examining the first clause of Cal. Penal Code § 631(a), referring to the use of a "telegraph or telephone wire");

*Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1124 (S.D. Cal. 2023) (examining Cal. Penal Code § 632.7(a), which contains the statutory language of "landline telephone"); *Augustine v. Lenovo (United States), Inc.*, No. 22-CV-2027-L-AHG, 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023) ("The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet."); *Kauffman v. Papa John's Int'l, Inc.*, No. 22-CV-1492-L-MSB, 2024 WL 171363, at *9 (S.D. Cal. Jan. 12, 2024) ("The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet ....").

Motorola also argues that it is exempt from liability under Section 638.51(b)(1). Section 638.51(b)(1) states that a "provider of electronic or wire communication service may use a pen register" to "operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). But Motorola has not established that it is a "provider of electronic or wire communication service," or that it collects the tracked information through the cookies to "operate, maintain, and test a wire or electronic communication service." *Id.* And Motorola's argument that Gabrielli has not "alleged any facts in the Complaint that would preclude the applicability of this exception," ECF No. 12 at 27, ignores the fact that the burden falls on Motorola to establish the applicability of this exception. *See Mirmalek*, 2024 WL 5102709, at *5; *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) ("Defendant does not argue that the collection of this additional data is necessary to operate or maintain the Website. Nor does Defendant argue that the collection of any data by a third party is necessary.").

Accordingly, Motorola's motion to dismiss Gabrielli's claim under California Penal Code § 638.51 is denied.

### 3. Breach of Contract

To state a claim for breach of contract, a plaintiff must allege the "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015).

***13** The Court finds that Gabrielli has not adequately alleged damages to support a claim for breach of contract. "Under California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). The complaint asserts that "[a]s a direct and proximate result of Defendant's breach of contract, Plaintiff and Class members did not receive the full benefit of the bargain, and instead received services from Defendant that were less valuable than described in the Privacy Statement." ECF No. 1 ¶ 167. But "the lost benefit of the bargain is not sufficient to allege damages because [Gabrielli] ha[s] not shown that [he] paid anything for the" received services—access to Motorola's website. *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019); *see also Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 724 (N.D. Cal. 2014) (finding benefit of bargain theory of damages defective because defendant's services were free).

Because the Court dismisses Gabrielli's contract claim on the basis of its defective damages allegations, it does not address the parties' remaining arguments regarding Gabrielli's breach of contract claim.

### 4. Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (citations and internal quotation marks omitted). "Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Id.* (citation and internal quotation marks omitted). A "breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself and it has been held that bad faith implies unfair dealing rather than mistaken judgment." *Id.* at 1394 (citation and internal quotation marks omitted) (cleaned up). Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege facts that

> show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.
>
> If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

*Id.* at 1395; *see also Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999) (holding that, where the "claim of breach of the implied covenant relies on the same acts, and seeks the same damages, as [the plaintiff's] claim for breach of contract," the court may dismiss the claim for breach of the implied covenant of good faith and fair dealing as duplicative).

Motorola argues that Gabrielli's claim for breach of the implied covenant "mimics his breach of contract claim, and so should be dismissed as superfluous." ECF No. 12 at 32. Gabrielli does not respond to this argument in his opposition and thus concedes the point. *See Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them in her opposition." (collecting cases)). The Court finds that Gabrielli's claim for breach of the implied covenant suffers from the same defective damages allegations as does his claim for breach of contract.

***14** Accordingly, the Court dismisses Gabrielli's claim for breach of the implied covenant of good faith and fair dealing.

### 5. Fraud and/or Misrepresentation

"Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citation and quotation omitted). Motorola argues that Gabrielli fails to meet these requirements.

The Court disagrees. The complaint states that the "who" is Motorola; the "what" are misrepresentations by Motorola through the popup banner offering users the option to "Reject All non-essential cookies;" the "when" is the multiple occasions that Gabrielli visited Motorola's website between February 2022 and January 2024; the "where" is on Motorola's website; and the "how" is through the storage of cookies on users' devices that transmit personal information about the users. *See* ECF No. 1 ¶¶ 2, 22–24, 27, 44, 50 70–76. These allegations satisfy the "who, what, when, and where" of Rule 9(b). *See, e.g., Amin v. Subway Restaurants, Inc.*, No. 21-CV-00498-JST, 2022 WL 20184652, at *4 (N.D. Cal. July 7, 2022) (finding Rule 9(b) satisfied where "the 'who' is Subway; the 'what' are misrepresentations and/or omissions by Subway through marketing, labeling, and advertising its tuna salad products as 'tuna;' the 'when' is since 2013 and throughout the Class Period; and the 'where' is Subway's in-store and online menus"); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (finding Rule 9(b) satisfied where "the 'who' is Bromley Tea Company and other defendants; the 'what' is nine discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of its products, including Pure Green Tea and 100% Organic Pure Black Tea, as well as on its website; the 'when' is since 2008 and throughout the class period; the 'where' is Bromley's package labels and website"); *Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 WL 2029069, at *3 (N.D. Cal. May 8, 2019) (finding the plaintiff satisfied Rule 9(b) by alleging "that she purchased Crisco EVOO from a Wal-Mart in Antioch multiple times in 2017 and 2018 in reliance on the packaging's purportedly false claim that it was entirely extra virgin olive oil").

Motorola also rehashes its "bona fide error" argument to contend that Gabrielli cannot allege that Motorola knew any statements it made were untrue. For the reasons explained above, the Court rejects that argument because it is based in facts not alleged in

the complaint. Gabrielli has specifically alleged that Motorola did know that its representations regarding the "Reject All" button were false and that it intentionally misrepresented its cookies policy to collect users' data. *See, e.g.*, ECF No. 1 ¶¶ 2, 3, 14, 116.

The Court thus denies Motorola's motion to dismiss Gabrielli's fraud and/or misrepresentation claim.

**6. Trespass to Chattels**

In California, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018) (quoting *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 54 Cal. Rptr. 2d 468, 473 (1996)). The California Supreme Court has held that the principles underlying the tort apply to allegations of digital trespass. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003). Thus, "[i]n order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citing *Thrifty-Tel, Inc.*, 54 Cal. Rptr. 2d at 473). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Hamidi*, 30 Cal. 4th at 1356).

***15** Motorola challenges only the second element of damages—contending that Gabrielli has not adequately alleged any damage to or impaired functioning of his device. The Court agrees. Gabrielli's alleges that Motorola's trespass "caused Plaintiff and other users the following damages: Nominal damages for trespass; reduction of storage, disk space, and performance[ ]; and loss of value of Plaintiff's and other users' computing devices." ECF No. 1 ¶ 184. These allegations are too conclusory to state a claim for trespass to chattels, as Gabrielli "offer[s] no factual support for these allegations. And it is not obvious how the presence on one's computer of the cookies from the providers' websites would result in any cognizable reduction in storage, disk space, or performance." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (internal citation omitted). Accordingly, the Court dismisses Gabrielli's claim for trespass to chattels.

**7. Unjust Enrichment**

Gabrielli asserts a claim for unjust enrichment based on Motorola's "scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions" relating to the "Reject All" button and usage of cookies. ECF No. 1 ¶¶ 152–53. Motorola argues that the Court should disallow this claim because Gabrielli has separately brought a breach of contract claim and thus alleges the existence of an enforceable, binding agreement covering the same rights. ECF No. 12 at 35–36.

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where ... express binding agreements exist and define the parties' rights." *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172, 114 Cal. Rptr. 2d 109, 125 (2001). Nonetheless, "[a] plaintiff may assert inconsistent theories of recovery at the pleading stage, including inconsistent claims alleging both the existence and the absence of an enforceable contract." *Saroya v. Univ. of the Pac.*, 503 F.Supp.3d 986, 998 (N.D. Cal. 2020) (citing Fed. R. Civ. P. 8). "However, a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Id.* at 998 (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2023)). Given that the Court has dismissed Gabrielli's breach of contract claim, it declines to dismiss his claim for unjust enrichment on this basis.

**D. Motion to Strike**

Motorola asks the Court to strike the class allegations under either Rule 12(f) or Rule 23. Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and citations omitted). Similarly, Federal Rule of Civil Procedure 23(d)(1)(D) allows the Court to "issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

"[A] motion to strike class claims based only on the pleadings is proper only if the court is 'convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.' " *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 976 (N.D. Cal. 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)). "[D]ismissal of class allegations at the pleading stage should be done rarely and ... the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (quoting *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, *4 (D.N.J. 2006) (internal quotation omitted)); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d. 2005) (providing that the practice employed in the overwhelming majority of class actions is to address class certification issues only after an appropriate period of discovery).

***16** Here, Motorola argues that the putative class cannot be certified because (1) Gabrielli lacks Article III standing; (2) Gabrielli and the putative class members agreed to bring their claims on an individual basis under the Terms of Use; (3) the putative class cannot meet the requirements of Rule 23(a) and (b); and (4) the putative class definition includes members who would have claims that are time barred under certain of the asserted causes of action. *See generally* ECF No. 13. Gabrielli argues that Motorola's motion is improper because it attempts to make additional 12(b)(1) arguments rather than arguing that Gabrielli's class claims advance ' "spurious issues.' " ECF No. 21 at 6 (quoting *Whittlestone*, 618 F.3d at 973).

This is not an exceptional case that warrants the class claims being stricken at this stage. As this Court has done in prior cases, it "declines to strike the class allegations here where discovery has not yet commenced and the issues raised by [Defendants] are ones to be addressed at the class certification, not the motion to dismiss, stage." *Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2023 WL 11113888, at *14 (N.D. Cal. Mar. 28, 2023), *reconsideration denied sub nom. Nacarino v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2024 WL 847925 (N.D. Cal. Feb. 28, 2024); *see also F.G. v. CooperSurgical, Inc.*, No. 24-CV-01261-JST, 2024 WL 4982991, at *9 (N.D. Cal. Dec. 4, 2024); *Williams v. Affinity Ins. Servs., Inc.*, No. 23-CV-06347-JST, 2024 WL 3153214, at *8 (N.D. Cal. June 24, 2024); *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *8 (N.D. Cal. Feb. 20, 2024); *Dodson v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2014 WL 1493676, at *11 (N.D. Cal. Apr. 16, 2014).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Motorola's motion to dismiss. In sum, the Court dismisses Gabrielli's claims for breach of contract, good faith and fair dealing, and trespass to chattels with leave to amend. It denies the remainder of Motorola's motion to dismiss. The Court also denies Motorola's motion to strike.

Within 21 days from this order, Gabrielli may file an amended complaint solely to cure the deficiencies identified in this order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1939957

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.