UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY GARON,<br><br>             Plaintiff,<br><br>      v.<br><br>KELEOPS USA, INC.,<br><br>             Defendant. | Case No. 25-cv-02124-DMR<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Plaintiff Jeffrey Garon ("Garon" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Keleops USA, Inc. ("Keleops" or "Defendant"), asserting a single claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a). Keleops now moves to dismiss the First Amended Complaint ("FAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [1] [Docket No. 16 (Mot.).] Garon filed an opposition (Docket No. 22 (Opp'n)), and Keleops filed a reply (Docket No. 23 (Reply)). The parties also filed a joint stipulation for leave for Keleops to file a sur-reply. [Docket No. 23 (stip.); Docket No. 23-1 (proposed sur-reply).]

This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons stated below, the motion to dismiss is denied.

---

[1] Defendant filed the Notice of Removal and FAC as a single docket entry. [*See* Docket No. 1.] Citations to the Notice of Removal refer to ECF pages 1-6, and citations to the FAC refer to ECF pages 7-51.

**I.     BACKGROUND**

    **A.     Factual Allegations[2]**

Garon alleges that Keleops owns and operates the website https://gizmodo.com (the "Website").[3] FAC ¶ 1. When users visit the Website, Keleops causes various trackers[4]—the Steam Rail Tracker, AGKN Tracker, and Crowd Control Tracker (the "Trackers"), which are operated by third parties ironSource, Neustar, and Lotame (the "Third Parties")—to be installed on the user's internet browsers. *Id.* ¶¶ 2, 83. Specifically, to load the Website onto a user's browser, the browser sends an "HTTP" or "GET" request to Keleops' server where the Website data is stored. *Id.* ¶ 28. Keleops' server then sends an "HTTP response" back to the browser with instructions. *Id.* These instructions not only include how to properly display the Website, but also cause the Trackers to be installed on the browser. *Id.* ¶¶ 29-30.

The Trackers then cause the browser to send identifying information to the Third Parties. *Id.* ¶ 30. This includes the user's IP address, the user-agent string (browser, operating system, and device type), and device capabilities (e.g., supported image formats and compression methods). *Id.* ¶ 31. A number of elements—such as persistent identifiers and fingerprinting and server-side

---

[2] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[3] In footnotes, the parties discuss whether Keleops owns or operates the Website. Mot. at 7 n.1; Opp'n at 3 n.4. Keleops contends that it "is the sole member of Gizmodo USA LLC, the American entity owning and operating Gizmodo.com. Gizmodo USA LLC acquired Gizmodo.com in June 2024." Mot. at 7 n.1. As Garon points out, however, Keleops does not move to dismiss on grounds that it is an improperly named party. Opp'n at 3 n.4; *see generally* Mot. Garon asserts, without citation, that negotiating contracts or integrating code amounts to "installation," and deriving revenue through trackers constitutes "use." Opp'n at 3 n.4. The court declines to address such throwaway arguments and bare assertions made only in passing. *See Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) ("[W]e've refused to address claims that were only argued in passing . . . , or that were bare assertions . . . with no supporting argument[.]") (cleaned up); *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011) (declining to consider argument unsupported by any argument or legal authority). If the parties want an adjudication on an issue, they need to queue it up at an appropriate stage and state their positions along with supporting legal authority.

[4] The FAC alleges that "[w]hen users visit the Website, Defendant causes four Trackers—the Steamrail Tracker, AGKN Tracker, and Crowd Control Tracker ( collectively, the 'Trackers')—to be installed on Website visitors' internet browsers." FAC ¶ 2. It is unclear how many Trackers are allegedly installed: although Garon alleges there are "four Trackers," he only identifies three. *See id.* For purposes of this order, the court assumes there are three Trackers.

1  matching ("device identifier information")—remain and allow users to be identified even after
2  clearing standard session data, such as cookies. *Id.* This device identifier information forms a
3  detailed, unique fingerprint that allows for cross-site tracking and behavioral profiling. *Id.*; *see also*
4  *see id.* ¶¶ 84-114 (alleging functionality of Trackers).

Garon alleges that these Trackers constitute a "pen register" within the meaning of CIPA section 638.50(b), and that Keleops has violated CIPA section 638.51(a) by installing the Trackers absent Garon's consent and a court order. FAC ¶¶ 3, 33, 155, 157, 159. He further alleges that Keleops has long incorporated the Trackers' code into the Website's code. *Id.* ¶ 32. Thus, when Garon and other putative class members visited the Website, Trackers were installed on their browsers, which allowed the Third Parties to collect users' IP addresses and other device information to be used by Keleops and the Third Parties for marketing, advertising, and analytics purposes. *Id.* ¶ 32, 131-41.

### B. Procedural History

Garon initiated this action in the Superior Court of California, County of Marin on January 28, 2025, on behalf of "all California residents who accessed the Website while in California and had their IP address collected by the Trackers." *Id.* ¶ 143. The FAC asserts a single claim for violation of CIPA section 658.1(a). *Id.* ¶¶ 150-59. On February 28, 2025, Keleops removed to this court based on diversity jurisdiction. *See* Not. of Removal.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (internal quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," *i.e.*, "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

### III. DISCUSSION

#### A. Request for Judicial Notice

Keleops requests the court take judicial notice of minute orders issued in three cases in the Superior Court of California, County of Los Angeles: (1) *Licea v. Hickory Farms LLC*, Case No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024); (2) *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025); and (3) *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Jan. 28, 2025). [Docket No. 17 (RJN).]

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As filings in state court actions are undisputed matters of public record, the court grants Keleops' request and takes judicial notice of the existence of the rulings in the three cited minute orders. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts "may take judicial notice of undisputed matters of public record . . . , including documents on file in . . . state courts"); *Banks v. Allison*, 140 F.4th 1181, 1185 n.3 (9th Cir. 2025) (taking judicial notice of state court records).

4

**B.    Stipulation to File Sur-Reply**

Garon contends that Keleops' reply raises new arguments that were not raised in its motion. [Docket No. 23 at 1.] Although Keleops disputes that its reply improperly raises new arguments, it stipulated to allow Garon to file a sur-reply. *Id.*; *see* Docket No. 23-1 (proposed sur-reply).

The court agrees with Garon that the reply offers new arguments that were not raised in the motion and do not address arguments raised in the opposition. The court therefore grants the stipulated request to file a sur-reply.

**C.    Allegations about Trackers as Pen Registers**

Keleops argues the CIPA claim fails because Garon has not alleged the existence of a pen register for two reasons. First, Keleops contends that the FAC "alleges the transmission of Plaintiff's IP address," but that "[r]ecording an IP address is not equivalent to recording the numbers dialed from a phone and does not make any record of other outgoing routing, dialing, or signaling information." Mot. at 9. Second, Keleops asserts that software is not a "device or process" within the meaning of CIPA. *Id.* at 10-14.

CIPA provides that "a person may not install or use a pen register . . . without first obtaining a court order[.]" Cal. Penal Code § 638.51. A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

The FAC contains sufficient allegations that the Trackers constitute "pen registers" within the meaning of CIPA. First, the FAC adequately alleges that the Trackers constitute a "device or process." *See, e.g.*, FAC ¶ 91 ("The Steamrail Tracker is at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.'") (citation omitted); *id.* ¶ 92 ("[T]he Steamrail Tracker is a 'device' because 'in order for software to work, it must be run on some kind of computing device.'") (citation omitted); *id.* ¶ 101 ("The AGKN Tracker is at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.'") (citation omitted); *id.* ¶ 102 ("[T]he AGKN Tracker is a 'device' because 'in order for software to work, it must be run on some kind of computing device.'") (citation omitted); *id.* ¶ 112 ("The Crowd Control

1  Tracker is at least a 'process' because it is 'software that identifies consumers, gathers data, and
2  correlates that data.'") (citation omitted); *id.* ¶ 113 ("[T]he Crowd Control Tracker is a 'device'
3  because 'in order for software to work, it must be run on some kind of computing device.'") (citation
4  omitted).

5  These allegations are sufficient to withstand Keleops' motion. "A process can take many
6  forms" including "software that identifies consumers, gathers data, and correlates that data through
7  unique 'fingerprinting.'" *Greenley v. Kochava*, Inc., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023),
8  (finding a software development kit constituted a pen register); *see Mirmalek v. Los Angeles Times*
9  *Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024)
10 (finding "[p]laintiff adequately allege[d] that the Trackers are a 'device or process' as required by
11 CIPA's definition of a pen register" based on similar allegations); *Shah v. Fandom, Inc.*, 754 F.
12 Supp. 3d 924, 928 (N.D. Cal. 2024) (same).

13 Second, there are plausible allegations that the Trackers "record[] or decode[] . . .
14 addressing . . . information . . . but not the contents of a communication." Cal. Penal Code
15 § 638.50(b). The FAC alleges that an "IP address is a unique identifier for a device," and that
16 "[p]ublic IP addresses can be used to determine the approximate physical location of a device." *Id.*
17 ¶¶ 34, 38; *see id.* ¶ 42 ("[T]he public IP address divulges the approximate location of the user that
18 is connecting to the Internet and the router directing those communications (presumably the user's
19 house or workplace) . . ."). Moreover, while "the Trackers . . . enabled the Third Parties to collect
20 Plaintiffs and Class Members' IP addresses," they "do not collect the content of Plaintiffs and the
21 Class's electronic communications with the Website." *Id.* ¶¶ 155-56. This is sufficient to survive
22 a Rule 12(b)(6) motion. *See Shah*, 754 F. Supp. 3d at 929 ("Construing the pleadings in the light
23 most favorable to Plaintiff, the IP addresses collected by the Trackers fall within the statutory
24 definition of 'addressing' information.") (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th
25 Cir. 2014)); *In re Zynga Priv. Litig.*, 750 F.3d at 1108 ("IP addresses 'constitute addressing
26 information and do not necessarily reveal any more about the underlying contents of communication
27 than do phone numbers.'") (citation omitted).

28 Keleops' arguments to the contrary are based on an unsupported and impermissibly narrow

reading of the statute. According to Keleops, CIPA was intended to "to protect individuals from the use of 'device[s] or process[es]' that could be used for telephone surveillance[,]" and "[n]othing in the Penal Code extends a pen register to software." Mot. at 10 (brackets in the original; citations omitted); *see id.* at 9 ("A pen register is a device installed on a landline telephone to make a record of the phone numbers dialed from that phone."); *id.* at 10 ("The 'device or process' required under Section 638.50 must be tied to 'telephonic functionality' . . ."). Keleops wholly fails to acknowledge that courts have repeatedly rejected these arguments and makes no attempt to distinguish those cases from the case at hand. *See Fajardo v. Barr*, 808 F. App'x 413, 414 (9th Cir. 2020) ("[T]he failure to mention *Roman-Suaste* in the opening brief is inexplicable. We take this opportunity to remind counsel that the duty of candor requires counsel to bring relevant adverse authority to our attention and argue why that authority does not control.").

Contrary to Keleops' argument, "[n]othing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929. Rather, "the expansive language in the California Legislature's chosen definition" of a pen register "is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but . . . is vague and inclusive as to the form of the collection tool—'a device or process.'" *Greenley*, 684 F. Supp. 3d at 1050 (citing Cal. Penal Code § 538.50(b)); *see Shah*, 754 F. Supp. 3d at 928 (quoting *Greenley*, 684 F. Supp. 3d at 1050); *Mirmalek*, 2024 WL 5102709, at *3 (same); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) ("Defendant argues that this language makes clear that § 638.51 applies only to telephone surveillance, not software. . . . However, as this Court explained in *Moody v. C2 Educational Systems Inc.*, § 638.51 and the definitions supplied by § 638.50 are not so limited."). "If the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Gabrielli v. Motorola Mobility LLC*,

7

1  No. 24-CV-09533-JST, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (citing Cal. Penal Code §§ 631(a), 632.7). The statutory language "indicates courts should focus less on the form of the data collector and more on the result." *Greenley*, 684 F. Supp. 3d at 1050.

As the statute does not specify the form of the "device or process," the idea of what constitutes such "device or process" has evolved. "Traditionally, law enforcement used 'pen registers' in investigations to record all numbers called from a particular telephone, and 'pen registers' required physical machines. Today, pen registers take the form of software." *Greenley*, 684 F. Supp. 3d at 1050 (footnote omitted). Similarly, "[a] process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Id.* Courts have thus repeatedly "reject[ed] the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'" *Id.* at 1051.

Keleops' cited cases are not persuasive. For instance, *Smith v. Maryland*, 442 U.S. 735 (1979), and *People v. Larkin*, 194 Cal. App. 3d 650 (1987), were decided before the internet became prevalent. Those courts thus did not have the opportunity to consider whether software could fall within the scope of CIPA.

Keleops also cites three state court cases that have "dismissed similar CIPA pen register claims": *Licea v. Hickory Farms LLC*, *Sanchez v. Cars.com Inc.*, and *Aviles v. Liveramp, Inc.*[5] Mot. at 10-12, 15; *see* RJN. The court respectfully declines to do so here. *Licea* and *Sanchez* reached their conclusions based on an analysis of CIPA's legislative history. *Licea*, 2024 WL 1698147, at *3 ("Legislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications."); *Sanchez*, WL 487194, at *3 ("Here, the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices'

---

[5] In *Avila*, the court noted that, "[w]hile the statutory definition of a pen register now includes electronic communications in mediums other than simply telephone communications, Plaintiff has not provided authority showing that the category of information collected by pen registers as defined by the statute has been expanded." 2025 WL 487196, at *2. That is not the case here. As set forth above, at least three reported opinions issued by California-based federal district courts have held that trackers that collect IP addresses fall within CIPA's scope.

1  refers to devices or processes that are used to record or decode dialing, routing, addressing, or
2  signaling information from telephone numbers, not internet communications such as websites."").
3  The court is persuaded by the reasoning in *Greenley*, *Shah*, and *Mirmalek*—which was based on the
4  plain statutory language. *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073
5  (9th Cir. 2016) ("When an examination of the plain language of the statute, its structure, and purpose
6  clearly reveals congressional intent, our judicial inquiry is complete."); *Riganian v. LiveRamp
7  Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *12 (N.D. Cal. July 18, 2025) ("[T]he
8  Court respectfully disagrees with the California Superior Court's conclusion in *Sanchez*, which
9  focused its analysis on the legislative history of the CIPA rather than on the expansive, plain
10 language of Section 638.50.").

11 Keleops' reliance on *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896
12 (N.D. Cal. May 13, 2025), is also misplaced. As an initial matter, *Khamooshi* concerned a
13 Rule 12(b)(1) motion to dismiss for lack of Article III standing, such that the issue was "whether
14 disclosure of IP addresses gives rise to a privacy injury." 2025 WL 1408896, at *1-3. Keleops has
15 not moved to dismissed for lack of standing, and it does not otherwise explain why *Khamooshi*,
16 which did not consider whether trackers constitute pen registers under CIPA, is "particularly salient
17 here." Reply at 3. The court declines to consider Keleops' argument that "this lawsuit is not based
18 on any individualized harm, but rather part of a broader campaign to leverage statutory damages in
19 the absence of concrete injury" (*id.*), when Keleops brings its motion only pursuant to Rule 12(b)(6)
20 and made no such argument in its opening brief.

21 Finally, Keleops argues the FAC should be dismissed under the rule of lenity. Reply at 5.
22 At least one court has expressly declined to do so. In *Riganian v. LiveRamp Holdings, Inc.*, the
23 court rejected the defendant's argument that the rule of lenity applied to CIPA, explaining that

> "The rule of lenity applies to criminal and punitive statutes and
> requires ambiguities to be resolved in favor of the defendant." *Sec.
> & Exch. Comm'n v. Bardman*, 231 F. Supp. 3d 442, 447 n.6 (N.D.
> Cal. 2017) (citing *Fed. Election Comm'n v. Arlen Specter '96*, 150 F.
> Supp. 2d 797 (E.D. Pa. 2001)). The "rule of lenity only applies if,
> after considering text, structure, history, and purpose, there remains a
> 'grievous ambiguity or uncertainty in the statute.'" *Barber v. Thomas*,
> 560 U.S. 474, 488, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010) (quoting
> *Muscarello v. United States*, 524 U.S. 125, 139, 118 S.Ct. 1911, 141

United States District Court
Northern District of California

> L.Ed.2d 111 (1998)); *see also People v. Superior Ct. of Riverside Cnty.*, 81 Cal. App. 5th 851, 886, 297 Cal. Rptr. 3d 517 (2022) (explaining that the rule of lenity applies "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule" (internal quotations omitted)).

2025 WL 2021802, at *12. The court agrees. Like the defendant in *Rignanian*, Keleops has not identified any "grievous ambiguity or uncertainty" in CIPA.

For these reasons, the court denies Keleops' motion to dismiss on grounds that Garon failed to adequately allege the existence of a pen register within the meaning of CIPA.

### D. Exemption Under Section 638.51(b)

Keleops contends that it is subject to CIPA's exemption that allows "[a] provider of electronic or wire communication service may use a pen register or a trap and trace device . . . [t]o operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1); Mot. at 14 ("Fundamentally, any website provider must collect IP addresses to operate a website."); Reply at 7 ("Plaintiff does not dispute that Gizmodo.com must collect IP addresses to deliver content to visitors. This fundamental web functionality falls squarely within the statutory exemption.").

The court declines to dismiss the FAC on these grounds at this time. Whether Keleops uses the Trackers "[t]o operate, maintain, and test a wire or electronic communication service," Cal. Penal Code § 638.51(b)(1), is a question of fact not suitable for a Rule 12(b)(6) motion, which tests the sufficiency of the pleadings.

### E. Stay in Light of SB690

Keleops urges the court to stay the case while California Senate Bill 690 ("SB690"), which would amend California Penal Code sections 631, 632, 632.7, 637.2, and 638.50, is pending in the California Legislature. Mot. at 15-16. According to Keleops, SB690 "demonstrates a clear legislative intent to curb litigation created by misconstruing CIPA" and "would render this entire case moot if enacted." *Id.* at 15, 20. Garon argues there is no grounds for a stay based on a bill that may or may not be enacted with the current proposed language. Opp'n at 18-19.

The court agrees with Garon. SB690 is too tenuous to form a basis to stay the case. There is no indication when SB690 will be enacted, or whether the proposed language Keleops contends

bears on the issues here will be part of the final bill. *See San Francisco Tech., Inc. v. Dial Corp.*, No. 10-CV-04986-JF/PSG, 2011 WL 941152, at *4 (N.D. Cal. Mar. 17, 2011) (denying request to stay "pending the enactment of federal legislation that retroactively could alter the standing requirements" where "there [wa]s no indication that passage of the legislation is imminent" and "the unpredictability of the legislative process counsel[ed] against the imposition of a stay."); *Log Cabin Republicans v. United States*, No. CV 04-08425-VAP (EX), 2010 WL 11508368, at *7 (C.D. Cal. July 6, 2010) (denying motion to stay in light of pending legislation because, "[g]iven the many contingencies involved—including the threshold contingency of Congressional approval—and the lack of clear timelines, any ultimate repeal that may result from this legislation [wa]s at this point remote, if not wholly speculative."). Moreover, "[i]f courts were to stay actions every time new legislation was introduced the judicial system would grind to a halt." *Droesch v. Wells Fargo Bank, N.A.*, No. 20-CV-06751-JSC, 2021 WL 1817057, at *6 (N.D. Cal. May 6, 2021).

Accordingly, Keleops' request for a stay is denied.

## IV. CONCLUSION

For these reasons, the court denies Keleops' motion to dismiss. Keleops shall file an answer to the FAC within two weeks of this order.

**IT IS SO ORDERED.**

Dated: September 2, 2025

Donna M. Ryu
Chief Magistrate Judge

11